# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MICHELLE BARNETT**

**CIVIL ACTION**

**VERSUS**

**NO. 17-1793-JWD-SDJ**

**LOUISIANA DEPARTMENT
OF HEALTH**

## SUPPLEMENT TO RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment Pursuant to Fed. R. Civ. Proc. 56 on Plaintiff's Remaining Claims* (the "*Motion*") (Doc. 58) filed by Defendant the Louisiana Department of Health ("LDH" or "Defendant"). Plaintiff Michelle Barnett ("Barnett" or "Plaintiff") opposes the *Motion*. (Doc. 68.) Among other things, Defendant filed a *Local Rule 56(d) Reply Statement of Material Facts*, in which Defendant objects to Plaintiff's individual statements of fact and requests that the challenged statements of fact be stricken under M.D. La. Local Rule 56(e). (Doc. 69-1 at 1.) Because Defendant has submitted numerous objections in this case, the Court has decided to issue this supplement to the ruling and order on the *Motion*, (Doc. 74), to separately address the preliminary evidentiary issues raised by Defendant.

## I.      Preliminary Evidentiary Issues

Defendant specifically objects to certain parts of three affidavits filed on behalf of Plaintiff in support of her opposition to Defendant's *Motion*. (*See* Doc. 69-1 at 2–26.) The affidavits objected to are by Michelle Barnett, (Doc. 68-2), Kelly McNabb, (Doc. 68-3), and Catherine Altazan, (Doc. 68-4). Defendant argues that the objected-to parts of the affidavits should be excluded from the Court's consideration on the following grounds: "(1) hearsay; (2) self-serving

testimony; (3) relevance; (4) lack of personal knowledge; and (5) improper lay opinion on ultimate legal issue." (Doc. 69-1 at 2.)

At the outset, the Court notes that a majority of the facts objected to are immaterial for purposes of the *Motion*. Though the Court has reviewed all of the evidence, the Court will not detail a ruling on every evidentiary objection Defendant made, as doing so would not be a wise use of judicial resources. Instead, the Court will first provide an overview of the principles it utilized in deciding what evidence to consider, and then rule on only the objections pertaining to facts that are relevant to the Court's analysis of Plaintiff's claims.

### A.  Relevant Legal Principles

In ruling on Defendant's objections, the Court will refer to and rely on the following principles of law.

### 1. Legal Principle #1

"Rule 56(c)(4) provides that when affidavits are used to support or oppose a summary-judgment motion, they 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.' " 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (4th ed.) (quoting Fed. R. Civ. P. 56(c)(4)).

### 2.Legal Principle #2

Note, however, that Rule 56(c)(2) states: "A party may object that the material cited to support or dispute a fact cannot be presented *in a form that would be admissible in evidence*." Fed. R. Civ. P. 56(c)(2) (emphasis added).

### 3. Legal Principle #3

The Fifth Circuit has explained:

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible ..., the material may be presented in a form that would not, in itself, be admissible at trial." 11 Moore's Federal Practice–Civil ¶ 56.91 (2017); *see also Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (holding that a "proponent need only 'explain the admissible form that is anticipated" (quoting Fed. R. Civ. P. 56, advisory committee's note to 2010 amendment)); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015) (recognizing that a "court may consider ... the content or substance of otherwise inadmissible materials where the 'the party submitting the evidence show[s] that it will be possible to put the information ... into an admissible form." (alteration in original) (quoting 11 James Wm. Moore et al., Moore's Federal Practice–Civil ¶ 56.91[2] (3d ed. 2015))); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (determining that a district court may consider a statement "if the statement could be reduced to admissible evidence at trial or reduced to admissible form." (citation omitted)).

*Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017).

### 4. Legal Principle #4

Whether the statements as made by the declarant are hearsay is not relevant in the summary judgment context, because at this stage "materials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.' " *LSR Consulting, LLC v. Wells Fargo Bank, N.A.,* 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)). And Plaintiff asserts the substance of the relevant statements can be presented at trial in admissible form either through the declarant's testimony, the testimony of TEA members, or the testimony of Comptroller personnel . . . . Moreover, Defendant's objections here are more properly suited to the trial context where the disputed evidence in the precise form sought to be admitted can by analyzed in its full context. For evidence to be proper at the summary judgment stage it does not need to be admissible in the exact form presented, but merely capable of being "presented in a form that would be admissible." Fed R. Civ. P. 56(c)(2).

*Texas Ent. Ass'n, Inc. v. Hegar*, No. 17-594, 2019 WL 13036162, at *15 n.12 (W.D. Tex. Feb. 27, 2019), *aff'd*, 10 F.4th 495 (5th Cir. 2021); *see also Humphrey v. Tidewater GOM, Inc.*, No. 20-817, 2022 WL 2912561, at *8 (M.D. La. July 22, 2022) (deGravelles, J.) (considering hearsay

3

evidence for summary judgment purposes); *In re TK Boat Rentals, LLC*, 411 F. Supp. 3d 351, 374 (E.D. La. 2019) (allowing emails between counsel and a declaration confirming the authenticity and content of the emails to be admitted as evidence in ruling on summary judgment motion, holding that "[b]ecause the content of the emails may be presented in a form admissible at trial, [the] declaration and the emails are competent summary judgment evidence"); *Ali v. Dist. Dir.*, 209 F. Supp. 3d 1268, 1276 (S.D. Fla. 2016) ("Nevertheless, a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form. . . . The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial.") (citations and internal quotations omitted).

For our purposes here, it is only necessary to consider whether the disputed evidence can be presented in a form admissible at trial. *In re TK Boat Rentals, LLC*, 411 F. Supp. 3d at 374. And, as stated by the court in *Ali v. District Director*: "[t]he most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." 209 F. Supp. 3d at 1276 (citations omitted).

### 5. Legal Principle #5

"[A]n affidavit in support of a motion for summary judgment that simply attacks the credibility of the opposing party's witnesses will be ineffectual. On the other hand, if the papers raise a question of credibility, that issue must be resolved at trial and summary judgment is precluded." 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (4th ed.).

### 6. Legal Principle #6

4

"The court will disregard only the inadmissible portions of a challenged affidavit and consider the rest of it." 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (4th ed.) (citing, inter alia, *Akin v. Q-L Investments, Inc.*, 959 F.2d 521 (5th Cir. 1992); *Lee v. National Life Assur. Co. of Canada*, 632 F.2d 524 (5th Cir. 1980)).

### 7. Legal Principle #7

Affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Personal knowledge "includes inferences—all knowledge is inferential—and therefore opinions. But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."

*Outley v. City of Chicago*, 354 F. Supp. 3d 847, 866 (N.D. Ill. 2019) (citation omitted).

### 8. Legal Principle #8

One particularly important problem of admissibility is the question of relevance. Some early cases indicated that affidavits are admissible only to prove facts put in issue by the pleadings. These cases, however, are inconsistent with the contemporary view of the function of the pleadings and the rejection of the theory-of-the-pleadings doctrine as well as of the former rules against variance. Therefore, an affidavit should be excluded only when its irrelevance is clear. Moreover, the court's power to reject an affidavit should be limited by the policy expressed in Rule 15 that the judge may exercise discretion to allow the pleadings to be amended to conform to the issues presented by the record, which means that the relevance of an affidavit should be tested on the basis of the issues presented on the motion.

10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (4th ed.).

### 9. Legal Principle #9

Motions to strike are generally disfavored, "and usually only granted in circumstances where the contested evidence causes prejudice to the moving party." *Rodgers v. Gary Cmty. Sch. Corp.,* 167 F. Supp.3d 940, 948 (N.D. Ind. 2016); *Kuntzman v. Wal-Mart*, 673 F. Supp.2d 690, 695 (N.D. Ind. 2009). The court is not even required to strike inadmissible evidence: "the Federal Rules of Civil Procedure allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an

admissible form." *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (citing Fed.
R. Civ. P. 56(c)(2)-(4)). . . . "[I]t is the function of a court, with or without a motion
to strike, to review carefully both statements of material facts and statements of
genuine issues and the headings contained therein and to eliminate from
consideration any argument, conclusions, and assertions unsupported by the
documented evidence of record offered in support of the statement." *Mayes v. City
of Hammond*, 442 F. Supp.2d 587, 596 (N.D. Ind. 2006.)

*Smith v. Nexus RVs, LLC*, 468 F. Supp. 3d 1012, 1029 (N.D. Ind. 2020).

### 10. Legal Principle #10

The fact that Plaintiff's affidavits here may be self-serving does not necessarily gainsay

their truth.

"A party's own testimony is often 'self-serving,' but [a court] do[es] not exclude it
as incompetent for that reason alone." Instead, testimony based on personal
knowledge and containing factual assertions suffices to create a fact issue, even if
it is self-serving. In fact, "characterizing a party's testimony as 'self-serving' is not
useful to the court. In a lawsuit, where each party is attempting to advance his own
cause and protect his own interests, we are scarcely shocked when a party produces
evidence or gives testimony that is 'self-serving.' "

*Hardy v. Wood Grp. PSN, Inc.,* No. 13-775, 2014 WL 1664236, at *3 (W.D. La. Apr. 25, 2014)

(quoting *Dean v. Ford Motor Credit Co*., 885 F.2d 300, 306 (5th Cir. 1989)) (other citation

omitted).

"As the Fifth Circuit has noted, '[i]f all "self-serving" testimony were excluded from trials,

they would be short indeed.' " *Parkman v. W&T Offshore, Inc*., 544 F. Supp. 3d 642, 650 (M.D.

La. 2021) (deGravelles, J.) (quoting *C.R. Pittman Constr. Co., Inc. v. Nat'l Fire Ins. Co. of

Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011)).

Note however, that this principle does not preclude a judge from rejecting or disregarding

an affidavit where that affidavit is flatly contradicted by earlier deposition testimony. *See, e.g.*,

*Daubert v. NRA Group*, *LLC*, 861 F.3d 382, 392 (3d Cir. 2017).

6

### B. Analysis

### 1. Objections to Affidavit of Plaintiff Michelle Barnett (Doc. 68-2)

| Number for Defendant's Objection and the Statement of Fact Objected To | Basis for Defendant's Objection | Ruling |
|---|---|---|
| 1.<br>"Randy Lemoine . . . suggested that I apply for his job . . . ." Affidavit of Michelle Barnett, at ¶ 10 (June 15, 2022) (Doc. 68-2). | Hearsay. | Overruled. See Legal Principle ("LP") # 3. |
| 3.<br>"The panel created by LDH to fill this position interviewed me and confirmed that I was more than qualified for the PM4 Position, when the head of the panel, Joe Comaty stated that I had been essentially serving in the PM4 Position, was working closely with Mr. Lemoine, and the panel ranked me as the top applicant of all qualified applicants." Affidavit of Michelle Barnett, at ¶ 14 (June 15, 2022) (Doc. 68-2). | Hearsay. Any confirmation by the "panel" to Plaintiff, which is denied, is an out-of-court statement offered for the truth of the matter asserted. Self-serving. | Overruled. See LP # 4. Plaintiff may call panel members to testify at trial. |
| 4.<br>"Another one of the candidates for the PM4 Position was Joshua Hardy, a male under the age of 35 who was not even minimally qualified for this position as determined by LDH's own criteria since he had graduated with a Bachelor's degree only two years previously (the position required eight years of post-baccalaureate professional experience)." Affidavit of Michelle Barnett, at ¶ 15 (June 15, 2022) (Doc. 68-2). | Hearsay. Relevance.<br>Joshua Hardy was never hired for a Program Manager 4 position that Plaintiff applied for or promoted to a Program Manager 4 position. Therefore, testimony concerning Mr. Hardy is irrelevant and cannot create a genuine issue of material fact as to whether Plaintiff was discriminated against. | Overruled. Insofar as hearsay objection, see LP # 4. As to the relevance objection, see LP # 8. Furthermore, the question of whether Hardy was – or was not – an applicant for PM4 position appears to be a question of fact which needs to be resolved at trial. |
| 10. | Conclusory. Self-serving. Improper lay opinion on ultimate legal issue. | Overruled in part and sustained in part. That portion of sentence |

| | | |
|---|---|---|
| "However, instead of promoting me to the PM4 Position in 2012 as the highest qualified and highest scored applicant, OBH made the curious decision to leave the position unfilled and this began the years' long discrimination, harassment, and retaliation that LDH subjected me to and which led ultimately to my constructive discharge from LDH." Affidavit of Michelle Barnett, at ¶ 21 (June 15, 2022) (Doc. 68-2). | | ending with "unfilled" is overruled. That portion beginning "…and this began…" is sustained as conclusory. See LP # 9. |
| 14.<br>"Subsequently, in February of 2013, LDH posted a second job announcement for the PM4 Position. This announcement coincided with the completion of the supposed four (4) months of additional experience that Hardy needed to meet the minimum eligibility requirements for the PM4 Position." Affidavit of Michelle Barnett, at ¶ 25 (June 15, 2022) (Doc. 68-2). | Relevance.<br>Joshua Hardy was never hired for a Program Manager 4 position that Plaintiff applied for or promoted to a Program Manager 4 position. Therefore, testimony concerning Mr. Hardy is irrelevant and cannot create a genuine issue of material fact as to whether Plaintiff was discriminated against. | Overruled. See ruling on objection 4. |
| 15.<br>"LDH closed the posting for the PM4 Position on February 18, 2013 and on February 19, 2013 OBH Human Resources Director Ruby Triggs informed me that the decision had already been made the year before and that Joshua Hardy would be placed into the PM4 Position as he had been promised even though I was the highest scored qualified applicant." Affidavit of Michelle Barnett, at ¶ 26 (June 15, 2022) (Doc. 68-2). | Relevance.<br>Joshua Hardy was never hired for a Program Manager 4 position that Plaintiff applied for or promoted to a Program Manager 4 position. Therefore, testimony concerning Mr. Hardy is irrelevant and cannot create a genuine issue of material fact as to whether Plaintiff was discriminated against. | Overruled. See ruling on objection 4. |
| 16.<br>"I responded to this information by advising Triggs that: I had incomparably more professional level experience than Joshua Hardy | Hearsay. Relevance.<br>Joshua Hardy was never hired for a Program Manager 4 position that Plaintiff applied for or promoted to a Program Manager 4 position. | Overruled. See ruling on objection 4. |

| | | |
|---|---|---|
| (over 20 years vs. 2 years). I had more relevant education than Joshua Hardy (Master's degree vs. no graduate degree). Both of my degrees are in the very technical fields of mathematics and statistics while his was economics (bachelor of arts) and political science. Joshua Hardy was rarely present in his office or the department. I was performing some of Joshua Hardy's duties because of his frequent absences from the office. The only reason Joshua Hardy was being promoted to the PM4 Position was because he was a young, white male and many such employees were being promoted and treated favorably, especially in technical fields throughout LDH, while older female employees were being punished and/or denied opportunities for promotion." Affidavit of Michelle Barnett, at ¶ 27 (June 15, 2022) (Doc. 68-2). | Therefore, testimony concerning Mr. Hardy is irrelevant and cannot create a genuine issue of material fact as to whether Plaintiff was discriminated against. Self-serving. | |
| 17. "Triggs . . . agreed that what was happening with Joshua Hardy was wrong." Affidavit of Michelle Barnett, at ¶ 28 (June 15, 2022) (Doc. 68-2). | Hearsay. Relevance. Joshua Hardy was never hired for a Program Manager 4 position that Plaintiff applied for or promoted to a Program Manager 4 position. Therefore, testimony concerning Mr. Hardy is irrelevant and cannot create a genuine issue of material fact as to whether Plaintiff was discriminated against. | Overruled. As to the hearsay objection, see LP # 4. As to the relevance objection, see ruling on objection 4. |
| 18. "I told Triggs that if LDH OHB went through with this ruse, I would take legal action." Affidavit of Michelle Barnett, at ¶ 29 (June 15, 2022) (Doc. 68-2). | Hearsay | Overruled. See LP # 4. |
| 19. "Triggs told me to wait until after February 28, 2013 to complain so | Hearsay | Overruled. See LP # 4. |

| | | |
|---|---|---|
| that my permanent status would be complete." Affidavit of Michelle Barnett, at ¶ 30 (June 15, 2022) (Doc. 68-2). | | |
| 20.<br>"Triggs' concern and warning made it clear to me that LDH would retaliate against me if I complained and Trigg's warning proved accurate as LDH began retaliating against me for years after I complained." Affidavit of Michelle Barnett, at ¶ 31 (June 15, 2022) (Doc. 68-2). | Relevance.<br>Self-serving.<br>Conclusory. | Overruled. See LP #s 8, 10. |
| 21.<br>"LDH wanted to place Joshua Hardy in the PM4 Position even though he - did not have even the minimum required professional level experience[;] did not have even the minimum required supervisory level experience[;] did not have the relevant work experience for the position that I had; did not have as extensive of an educational background as I did; had far less supervisory experience than I had (only six months as opposed to the required three years); had a poor performance record at LDH compared to my record; had a poor attendance record at LDH compared to my record; and, had no experience in the PM4 Position while I had already served in this position. In reality, the only credentials he needed was that he was a young white male being considered for a job in information technology." Affidavit of Michelle Barnett, at ¶ 32 (June 15, 2022) (Doc. 68-2). | Relevance.<br>Joshua Hardy was never hired for a Program Manager 4 position that Plaintiff applied for or promoted to a Program Manager 4 position. Therefore, testimony concerning Mr. Hardy is irrelevant and cannot create a genuine issue of material fact as to whether Plaintiff was discriminated against.<br><br>Lack of personal knowledge. Self-serving. | Overruled. See Ruling on objection 4 above. |
| 22. | Self-serving. | Overruled. See LP # 10. |

| | | |
|---|---|---|
| "As of 2017 (for over six years), I had yet to be promoted anywhere within LDH, despite my vast education and experience, excellent work performance, and the many positions for which I applied and was more than qualified to fill." Affidavit of Michelle Barnett, at ¶ 34 (June 15, 2022) (Doc. 68-2). | | |
| 27.<br>"I was denied promotion due to discrimination . . . ." Affidavit of Michelle Barnett, at ¶ 40 (June 15, 2022) (Doc. 68-2). | Lack of personal knowledge. Self-serving. Improper lay opinion on ultimate legal issue. | Sustained. Conclusory. |
| 28.<br>"LDH may claim that since Hardy did not get the position, there was no discrimination." Affidavit of Michelle Barnett, at ¶ 42 (June 15, 2022) (Doc. 68-2). | Self-serving. Speculative. | Sustained. Speculative and argumentative. |
| 29.<br>"Michael Carrone, who had been promoted previously over more qualified older and black females to a PM2 position (over Annette Giroir and Kolynda Parker, who both had graduate degrees in healthcare fields), was given the PM4 position at this time." Affidavit of Michelle Barnett, at ¶ 44 (June 15, 2022) (Doc. 68-2). | Relevance. Not Material. | Overruled. See LP # 8. |
| 30.<br>"With a Bachelor of English degree (was working on an MBA), he was grossly unqualified compared to the other females who applied for the position." Affidavit of Michelle Barnett, at ¶ 45 (June 15, 2022) (Doc. 68-2). | Relevance. Not material. | Overruled. See LP # 8. |
| 49.<br>"Korduner and Root tried to force me to hire an unqualified, young, white male under very questionable circumstances." Affidavit of Michelle Barnett, at ¶ 67 (June 15, 2022) (Doc. 68-2). | Relevance. Self-serving. | Overruled. See LP #s 8, 10. |

| | | |
|---|---|---|
| 54.<br>"In addition and most relevant, the person did not have the qualifications required for the position – namely SAS programming experience."<br>Affidavit of Michelle Barnett, at ¶ 72 (June 15, 2022) (Doc. 68-2). | Relevance.<br>Lack of personal knowledge. | Overruled. See LP #s 7, 8. |
| 55.<br>"I was now being required to participate in what appeared to be the same type of age and gender discrimination that was perpetrated against me previously by LDH . . . ."<br>Affidavit of Michelle Barnett, at ¶ 73 (June 15, 2022) (Doc. 68-2). | Self-serving. Improper lay opinion on ultimate legal issue. | Overruled. See LP #s 7, 10. |
| 79.<br>"[T]hroughout the time that I worked for LDH in OBH and in the Office of Secretary PI section and in particular in information technology (my field), there was a pattern and practice of discrimination against females. Examples include but are not limited to the instances below. . . .<br>Repeated promotions of Joshua Hardy. Additionally, Mr. Hardy received multiple promotions and raises throughout the previous four years in LDH totaling 97% at a time when state worker salaries were supposedly frozen due to budget cuts. In this same period of time, I received no promotions or raises.<br><br>When Joshua Hardy was filling two vacant positions in his OBH unit in 2013, he interviewed Michael Carrone, a young white male, and Kolynda Parker, an older black female. The two positions were Program Manager IA and Program Monitor. The manager position was at a higher level and pay. Although Carrone had only a Bachelor of | Relevance.<br>Joshua Hardy was never hired for a Program Manager 4 position that Plaintiff applied for or promoted to a Program Manager 4 position. Therefore, testimony concerning Mr. Hardy is irrelevant and cannot create a genuine issue of material fact as to whether Plaintiff was discriminated against. Further, testimony regarding alleged discrimination against individuals other than Plaintiff is not relevant to this case and cannot create a genuine issue of material fact as to whether *Plaintiff* was discriminated against.<br><br>Lack of personal knowledge.<br>Hearsay.<br>Self-serving.<br>Improper lay opinion on ultimate legal issue. | Overruled. See LP #s 4, 10. |

English degree and little health care or technical experience while Parker had fifteen years of such experience, had supervised large staffs and had a Master's degree in healthcare, Hardy's plan was to offer Carrone the manager position and Parker the monitor position. I advised him that there was no way he could justify that because it was obvious discrimination; he did it anyway.

Soon after, Michael Carrone was promoted to Program Manager 2 (PM2) of OBH Busines [sic] Intelligence/IT to replace Joshua Hardy over more qualified and older applicants within the unit including Annette Giroir and Kolynda Parker. Ms. Giroir, also with a Master's degree and many years of experience in healthcare, is an older female employee. Both of these ladies were already working in the section that this PM2 was to supervise. Ms. Giroir was passed over twice for the position, once denied in favor of Hardy and once denied in favor of Carrone (both young white males) even though she had been working in the section for over five (5) years. Interviews for this position were not even conducted. Additionally, Ms. Giroir received no promotions and no raises in this period of five years.

At this same time and to underscore how insidiously rampant the discrimination was in multiple LDH agencies, Michael Carrone was also offered a Program Manager 2 position in OPH (above unit in previous bullet was OBH) in a technical area working with data at the same time he was offered the

PM2 in OBH. Once again, he was offered this promotion over Kolynda Parker; Carrone even had the luxury of choosing which position he wanted, the OBH or the OPH position. He chose the OBH position in above bullet but OPH did not subsequently then extend the offer to the most qualified applicant, Ms. Parker. Instead, they offered her a position two levels lower as a Program Manager IA. Eventually, they offered the PM2 position to another young, white male from outside of LDH, Jay Besse, with again much less work and supervisory experience than Ms. Parker. Eventually, Ms. Parker filed a discrimination complaint with LDH Human Resources.

In March 2016, Michael Carrone was promoted to the PM4 Section Chief position in LDH OBH IT/BI section that was denied to me on ten separate occasions even though I was much more highly qualified than Carrone. Therefore within two years of his tenure at LDH, Carrone was promoted twice while I had not been promoted at all in my six and a half years in LDH.

When the same two OBH positions from the 2nd bullet above were being filled again (manager and monitor of a technical area), two internal applicants were interested in moving to the area. Chris McCurnin, a white male with no experience in the section (most of his experience was ad hoc policy) and Jing Liu, a female, who was already working in the section and had a very relevant Master's degree in Statistics - both were interested in moving.

However, McCurnin was offered the higher position and Liu was offered the lower position - once again, in exact opposition to their educational and experience levels but along the same pattern where the less qualified male is promoted over the more qualified female.

John Korduner, a young white male under the age of 40, with only one year of healthcare experience in LDH was promoted to Program Manager 4 PI Section Chief ahead of his own supervisor in Legal who was an older female with many years of healthcare experience at LDH. He was not even minimally qualified for the position by supervisory requirements but an exception was made for him. The two other applicants that were interviewed were over the age of 60.

Joseph Foxhood, a white male, was promoted to Program Manager 4 over me. I was more highly educated (Master's degree, he had no graduate degree) and experienced than Mr. Foxhood. At the time of his promotion, Mr. Foxhood was not an employee of LDH (only a contractor), and had professional level experience (defined by La. Civil Service as post-baccalaureate) of only three years receiving his Bachelor's degree in 2011. The minimum qualifications for the job required five years professional level experience. I had 25; Foxhood had three (thus he did not even meet the minimum). Additionally, Mr. Foxhood was the supervisor responsible for the discriminatory behavior in bullet 4 above with Carrone and Besse illustrating that

the beneficiaries of the discrimination continued with their own discriminatory practices in the staff they hire, thus creating a vicious, never-ending cycle.

Joseph Foxhood hired an external employee, Jay Besse, a young male, to a Program Manager 2 position over Kolynda Parker. At the time, Parker was a Program Manager I who had been working for Foxhood for over a year. She was much more highly qualified (two Bachelor's degrees, a Master's degree and healthcare certification with over fifteen years of experience) than Besse (no graduate degree and only five years of work experience) and as a black female was denied promotion once again as she had been when she was passed over for Michael Carrone in OBH. Eventually, Ms. Parker complained and put her experience of discrimination in writing to her supervisors and HR, to no avail.

Further, Besse was hired at the same level as me when I was hired (PM2) even though he only had a Bachelor's degree and only five years of work experience while I had a Bachelor's degree, a Master's degree and certification as a SAS Advanced Programer [sic] with 23 years of experience when I started working at LDH. Yet Besse received a 42% increase in pay from his previous job and started at $85,000 annual salary; I received a 23% increase in pay from my previous job and started at $80,000 annual salary.

| | | |
|---|---|---|
| Joshua Hardy, a young white male, was promoted to Program Manager 4 in Medicaid over highly qualified older employees including Tim Williams, an older black male and multiple PhD level employees.<br><br>Jode Burkett, a young white male, was promoted to Program Manager 2 over a highly educated and experienced older black male, Ron Johnson. Mr. Johnson was believed to be the natural person to be promoted because he was the most knowledgeable and senior staff member in the unit and was highly educated with two Masters' degrees, to Burkett's single Bachelor's degree. Additionally, Mr. Burkett received multiple raises throughout the previous five years in LDH totaling 11 % at a time when state worker salaries were supposedly frozen due to budget cuts. In this same period of time, I received no promotions and one department-ordered 4% salary increase.<br><br>Tyler Carruth, a young white male, was promoted to Program Manager 4 multiple times in multiple sections (Office of Public Health, Medicaid, Office of the Secretary) over older and more qualified applicants, including me. The first such promotion was when an older female was unceremoniously and humiliatingly removed from her PM4 position to make way for Mr. Carruth who had no experience in her section. She soon retired after the move. Additionally, Mr. Carruth received multiple promotions and raises throughout the previous five years in LDH totaling 18% at a time when state worker salaries were | | |

supposedly frozen due to budget cuts. In this same period of time, I received no promotions and one department-ordered 4% salary increase.

Ryan Bilbo, a young white male, was promoted to Program Manager 2. He received multiple promotions and raises in only three years' time in LDH totaling 30% at a time when state worker salaries were supposedly frozen due to budget cuts. In this same period of time, I received no promotions and one department-ordered 4% salary increase. Astonishingly, during an elevator ride with him on Tuesday, April 15, 2014, he actually admitted to me that he and Chris Dykes, his supervisor, decided that they 'have to start hiring people with some minimal level of skill, not just the people who are our friends'. Again, this was in a technical area of LDH where the good ol' boys club flourished.

Timothy White, a young white male, although staying at the same level throughout the previous five years, received Optional Pay Adjustments (OPA) which total approximately 14% in salary increases. Mr. White has repeatedly received these salary adjustments against rules which limit the frequency of these adjustments to a single individual. I was ignored when I requested a single OPA.

Upper management of LDH technical areas was consistently staffed with young white males - Zachary Jiwa, Lucas Tramontozzi (approximately 12% in overall

| | | |
|---|---|---|
| salary increases), Chris Dykes, Jeremy Deal, Tyler Carruth to name a few.<br><br>George Bucher, a white male, was hired to work for me in Program Integrity without my input. Even though I was his supervisor, had more experience and education (Master's degree vs a Bachelor's degree), Mr. Bucher was brought in making approximately $15,000 or approximately 20% more than me. When I tried to address this disparity with a request for promotion or Optional Pay Adjustment, I was ignored. Additionally, Mr. Bucher received multiple promotions and raises throughout the previous five years in LDH totaling 27% at a time when state worker salaries were supposedly frozen due to budget cuts. In this same period of time, I received no promotions and one department-ordered 4% salary.<br><br>Based on a salary study performed on LDH salaries through calendar year 2013 specifically in the area of information technology, female salaries lagged far behind their male counterparts. When studying how females fare through time regarding their individual salary increases, females again fared worse than males."<br><br>Affidavit of Michelle Barnett, at ¶ 103 (June 15, 2022) (Doc. 68-2). | | |
| 80.<br>"[S]ince I first complained to LDH of discrimination, LDH has retaliated against me and/or continued to discriminate against me by denying me dozens of promotions." Affidavit of Michelle | Self-serving.<br>Improper lay opinion on ultimate legal issue. | Sustained. Conclusory. |

| | | |
|---|---|---|
| Barnett, at ¶ 104 (June 15, 2022) (Doc. 68-2). | | |
| 85.<br><br>"Along with all of the above transgressions, LDH was able to and allowed by Civil Service to pay anyone whatever LDH wanted to pay them within the pay ranges which typically span tens of thousands of dollars. For instance, the pay range for a Program Manager 2 was anywhere from $50,000 to $107,000. Civil Service was known to be very lax in regards to compensation and enforcing their own rules with LDH during my employment with LDH." Affidavit of Michelle Barnett, at ¶ 109 (June 15, 2022) (Doc. 68-2). | Lack of proper foundation. Speculative. | Sustained. Lack of proper foundation and conclusory. |
| 89.<br><br>"Jay Besse (direct equal as a PM2) and George Bucher (subordinate to Michelle Barnett) are only two of many more examples of a direct correlation of how Michelle Barnett was paid less than men, even though she was more educated and had more experience than they were. As Bucher's supervisor, Michelle Barnett was making $17,406.00 less than him in 2014 (by 22%), even though she had more education and relevant experience than he did. When Michelle Barnett asked for an Optional Pay Adjustment to address this disparity, LDH denied her request. Likewise, in only four years, Joshua Hardy almost doubled his pay (receiving a total of 97% in raises) while Michelle Barnett at the same time received no promotions or raises. Additionally, Jode Burkett, Tyler Carruth, Ryan Bilbo, Michael Carrone, Timothy White, Lucas Tramontozzi, and George Bucher are all young white males | Lack of proper foundation as to the source of confidential compensation information on other LDH employees.<br>Relevance.<br>Joshua Hardy was never hired for a Program Manager 4 position that Plaintiff applied for or promoted to a Program Manager 4 position. Therefore, testimony concerning Mr. Hardy is irrelevant and cannot create a genuine issue of material fact as to whether Plaintiff was discriminated against. | Sustained as to "Additionally…" to end. Lack of proper foundation. Otherwise overruled. |

| | | |
|---|---|---|
| who also received multiple promotions and/or double digit pay raises during a time that Michelle Barnett received no promotions and only one agency-wide ordered 4% raise available to everyone. The pay disparity was an agency-wide problem with men typically and consistently compensated and promoted at higher per capita rates than women." Affidavit of Michelle Barnett, at ¶ 114 (June 15, 2022) (Doc. 68-2). | | |

### 2. Objections to Affidavit of Kelly McNabb (Doc. 68-3)

| Number for Defendant's Objection and the Statement of Fact Objected To | Basis for Defendant's Objection | Ruling |
|---|---|---|
| 90.<br>Entire Affidavit of Kelly McNabb (June 14, 2022) (Doc. 68-3). | Relevance.<br>This affidavit is replete with testimony concerning alleged discrimination against *Kelly McNabb* and other individuals—not Plaintiff. Therefore, this testimony is irrelevant and cannot create a genuine issue of material fact as to whether *Plaintiff* was discriminated against. | Sustained.<br>The circumstances of the alleged abuse suffered by Ms. McNabb seem substantially different than those alleged by Plaintiff. |

### 3. Objections to Affidavit of Catherine Altazan (Doc. 68-4)

The Court need not rule on each of the objections to portions of the Catherine Altazan Affidavit because, even when considering the information contained therein, Plaintiff is still

unable to make out a *prima facie* case of discrimination under Title VII, retaliation under Title VII, or wage discrimination in violation of the Equal Pay Act. (*See* Doc. 74.)

Signed in Baton Rouge, Louisiana, on <u>March 10, 2023</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**