## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

MICHELLE BARNETT

CIVIL ACTION

VERSUS

NO. 17-1793-JWD-SDJ

LOUISIANA DEPARTMENT
OF HEALTH

## RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment Pursuant to Fed. R. Civ. Proc. 56 on Plaintiff's Remaining Claims* (the "*Motion*") (Doc. 58) filed by Defendant the Louisiana Department of Health ("LDH" or "Defendant"). Plaintiff Michelle Barnett ("Barnett" or "Plaintiff") opposes the *Motion*. (Doc. 68.) Defendant has filed a reply. (Doc. 69.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's *Motion* is granted.

### I.   Introduction and Summary

#### A.  Overview

On December 22, 2017, Plaintiff filed suit in this Court asserting a total of seven claims under federal and state law. (*See* Doc. 1; *see also* Doc. 43 at 13.) As of this date, Plaintiff's only remaining claims are for: (1) discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and (2) wage discrimination in violation of the Equal Pay Act occurring after December 22, 2014.[1]

---

[1] On March 10, 2020, the Court dismissed with prejudice all claims for violations of the Equal Pay Act that occurred before December 22, 2014 for being untimely. (Doc. 43 at 25.) As such, the only remaining Equal Pay Act claims before this Court are those that occurred after that date.

Defendant moves to dismiss all of Plaintiff's remaining claims. Having carefully considered the arguments, law, and evidence, the Court will grant the *Motion* as it relates to Plaintiff's Title VII discrimination and retaliation claims. More specifically, summary judgment is granted on Plaintiff's Title VII discrimination claims because: (1) her discrimination claims for acts occurring before March 4, 2015 are time-barred; (2) her discrimination claims for acts occurring after June 20, 2016 have not been properly exhausted; and (3) with respect to her actionable claims of discrimination, she failed to produce competent summary judgment evidence to identify appropriate comparators. As for Plaintiff's Title VII retaliation claims, summary judgment is granted because: (1) her retaliation claims for acts occurring before March 4, 2015 are time-barred; and (2) some of her retaliation claims for acts occurring after March 4, 2015 have not been properly exhausted; and (3) with respect to her actionable claims of retaliation, she failed to meet her *prima facie* burden of establishing causation.

Finally, the Court will also grant the *Motion* as it relates to Plaintiff's Equal Pay Act claims because Plaintiff has failed to satisfy her *prima facie* case.

## II.    Preliminary Issues

### A.  There is No Claim for Age Discrimination under Title VII

As a preliminary note, the Court will briefly address Plaintiff's argument that she was discriminated against based on her age in violation of Title VII. Defendant, too, lumps Plaintiff's claims of age discrimination together with her claims of gender discrimination. However, there is no claim for age discrimination under Title VII. Instead, an employee claiming age discrimination under federal law must proceed under the Age Discrimination in Employment Act ("ADEA"). *See McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 461–62 (5th Cir. 2005) (recognizing that the Texas statute at issue was "substantively identical to its federal equivalent in Title VII with

2

the exception that federal law makes age discrimination unlawful under the ADEA") (cleaned up); *see also* 42 U.S.C. § 2000e–2(a) (by its terms, Title VII prohibits discrimination based on "race, color, religion, sex, or national origin").

Plaintiff originally sought relief under the ADEA, but her ADEA claims were dismissed by this Court on March 19, 2019. (Doc. 33 at 1, 21.) Thus, there is no age discrimination claim properly before this Court. As such, the Court will disregard Plaintiff's arguments concerning age discrimination and focus only on whether Plaintiff was discriminated against based on gender or sex under Title VII.

### B. Violations of Local Rule 56

#### 1. Plaintiff's Failure to Properly Controvert Facts Contained in Defendant's Statement of Facts

A party opposing a motion for summary judgment is required to "submit with its opposition a separate, short, and concise statement of material facts" that admits, denies, or qualifies the facts set forth in the moving party's statement of material facts. M.D. La. Local Rule 56(c). In denying or qualifying a fact, the opposing party must support each denial or qualification with a citation to the specific page or paragraph of identified record material supporting the assertion. M.D. La. Local Rule 56(c), (f). Facts contained in a supporting or opposing statement of material facts, if supported by specific record citations, are deemed admitted "unless properly controverted." M.D. La. Local Rule 56(f).

Here, Defendant filed with its *Motion* a statement of material facts it argues are not in dispute. (*Defendant's Statement of Material Facts Not in Dispute ("Def. SMF")*, Doc. 58-1.) In response, Plaintiff filed an opposing statement of facts. (*Plaintiff's Rule 56.2 [sic] Statement of Disputed Material Facts in Opposition to Defendant [LDH]* ("*Pl. OSMF*"), Doc. 68-1.)

In sum, Plaintiff failed to properly controvert the facts set forth in Defendant's *SMF* (Doc. 58-1), as none of Plaintiff's denials comply with M.D. La. Local Rules 56(c) and 56(f). A closer inspection of the portions of the affidavit cited by Plaintiff to support her denials shows that a majority of her evidence does not actually contradict the facts set forth by Defendant. Thus, the facts set forth in Defendant's *SMF* are deemed admitted. Accordingly, to the extent that the facts contained in Defendant's *SMF* are uncontroverted by Plaintiff and the evidence, and are material, they are deemed admitted. The Court notes that, while it has considered all of Defendant's *SMF*, only those facts that are material are incorporated into this Ruling.

### 2. Plaintiff's "Additional Facts" and Defendant's Reply Statement of Material Facts

Defendant additionally argues that Plaintiff's *OSMF* sets forth additional facts beyond mere explanation in support of her denials but fails to "contain in a separately titled section additional facts, as required by Local Rule 56(c)." (*See Defendant's Local Rule 56(d) Reply Statement of Material Facts* ("*Def. Reply SMF*"), Doc. 69-1 at 1.) Although Defendant contends that Plaintiff's *OSMF* violates M.D. La. Local Rule 56(c), Defendant nevertheless "treats and deems the arguments supporting [Plaintiff's] denials, and the allegations contained in the affidavits, as 'additional facts,' " and thus filed a reply statement "to object" to those individual statements of fact in accordance with M.D. La. Local Rule 56(d). (*Id.*) As explained below, the Court's rulings on these objections is contained in a supplement to this ruling that has been separately filed. (*See* Doc. 73.)

In the event the opposing party wishes to go beyond simply admitting, denying, or qualifying the moving party's facts by presenting additional facts, their "opposing statement may contain in a separately titled section additional facts," each of which is supported by specific record

citations. M.D. La. Local Rule 56(c). However, whether Plaintiff's *OSMF* violates this Rule is immaterial here because it essentially repeats the information set forth in Plaintiff's affidavit, and "case law recognizes that the Court can still consider record evidence to determine if there is a factual dispute." *Braud v. Wal-Mart Stores, Inc.*, No. 17-320, 2019 WL 3364320, at *4 (M.D. La. July 25, 2019) (deGravelles, J.) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 910 (5th Cir. 1998) (holding that, where plaintiff failed to oppose the motion for summary judgment, the facts in the "Statement of Undisputed Facts" were admitted, "except to the extent that the 'facts' in the 'Statement of Undisputed Facts' are contradicted by 'facts' in other materials attached to his motion for summary judgment." (citation omitted)); *Porter v. Dauthier*, No. 14-41, 2015 WL 5611647, at *8, *13 (M.D. La. Sept. 23, 2015) (deGravelles, J.)). Moreover, the reason for considering summary judgment evidence—including Plaintiff's affidavit—is even more justified here, as most of the facts material to this dispute are not set forth in Defendant's *SMF*.

Even if the Court were to consider the additional facts contained in Plaintiff's *OSMF*, Defendant's *Reply SMF* does not properly contradict those facts. Local Rule 56(d) directs the party submitting a reply statement of material facts to admit, deny, or qualify the additional facts submitted by the opposing party and requires each denial or qualification to be supported by a specific record citation. M.D. La. Local Rule 56(d). Although the *Def. Reply SMF* purports to deny and qualify facts set forth by Plaintiff, it fails to actually dispute the truth of the *facts* set forth by Plaintiff. Instead, the *Def. Reply SMF* is replete with legal arguments. Moreover, Defendant violated Local Rule 56(f) by failing to provide record citations for any of the replies contained therein. (*See Def. Reply SMF*, Doc. 69-1 at 27–43.) Therefore, to the extent the *Def. Reply SMF* attempts to deny or qualify the additional facts set forth by Plaintiff, those statements will not be considered. M.D. La. Local Rule 56(f).

### C.  Evidentiary Issues

Defendant submitted a large number of specific evidentiary objections. (*See Def. Reply SMF*, Doc. 69-1 at 2–26.) Specifically, Defendant objects to certain parts of three affidavits filed on behalf of Plaintiff. For the sake of judicial efficiency, the Court's rulings on those objections is not included herein, but is instead contained in a supplemental ruling separately filed in this case. (*See* Doc. 73.)

### III.    Relevant Background

Plaintiff is a fifty-seven year old woman who worked for Defendant, LDH, in various positions from 2011 through 2017. [2] (*Def. SMF*, ¶¶ 1–2, Doc. 58-1.) On April 29, 2011, Plaintiff was hired by LDH as a Medicaid Program Manager 2 ("PM2"). (*Id.* ¶ 2.) Thereafter, on March 1, 2012, she moved from LDH's Medicaid division to its Office of Behavioral Health ("OBH") and continued working there as a PM2. (*Id.*) Subsequently, on August 25, 2014, she was transferred back to a Medicaid PM2 position, and she remained in that position until she was transferred to a position with the Louisiana Division of Administration on November 20, 2017. (*Id.*)

On December 22, 2017, Plaintiff filed suit in this Court against LDH asserting a total of seven claims under federal and state law. (*See* Doc. 1.) She specifically alleged that, from 2012 through 2017, LDH discriminated against her on the basis of her age and gender and retaliated against her for opposing the discrimination perpetuated by LDH. (*Id.*) On March 19, 2019, this Court dismissed without prejudice Plaintiff's state law and ADEA claims. (Doc. 33.) Subsequently, on March 10, 2020, this Court dismissed with prejudice all claims for violations of

---

[2] Although Plaintiff purportedly denies this statement of fact, she does not properly controvert this fact in accordance with M.D. La. Local Rule 56, nor does the evidence cited in support of her denial contradict this fact. (*See Pl. OSMF*, ¶ 2, Doc. 68-1.) Consequently, the fact is deemed admitted. As discussed above, the same is true for most of the facts set forth in the *Def SMF*. Therefore, when the *Def. SMF* is cited by paragraph number to support a particular fact, that fact is considered undisputed and thus admitted under Local Rule 56. *See* M.D. La. Local Rule 56(c), (f).

the Equal Pay Act occurring before December 22, 2014. (Doc. 43.) Thus, as explained above, the only remaining claims before the Court are Plaintiff's Title VII discrimination and retaliation claims and her Equal Pay Act claims based on alleged violations that occurred after December 22, 2014.

Plaintiff's Title VII claims are based, in large part, on Defendant's failure to promote or hire her for a substantial number of positions she applied for. Between June of 2012 and December of 2021, Plaintiff applied to more than 100 positions within LDH. (*Pl. OSMF*, ¶ 2, Doc. 68-1; Pl. Aff., ¶ 107, Doc. 68-2.) Of these hundreds of positions, the position discussed most extensively is the "original OBH" Program Manager 4 position referenced below. (*Pl. OSMF*, ¶ 16, Doc. 68-1.)

In May of 2012, Plaintiff's supervisor, Randy Lemoine, announced his retirement. (Pl. Aff., ¶ 10, Doc. 68-2.) At the time, Lemoine was a Program Manager 4 ("PM4") and the Section Chief of Business Intelligence. (*Id.*) He suggested to Plaintiff that she apply for his job, hereinafter referred to as "the PM4 Position," and he began training her on the duties for that position. (*Id.*) Thereafter, in the summer of 2012, LDH for the first time posted the opening for the PM4 Position. (*Id.* ¶ 11.) Plaintiff applied for the position and was interviewed; during her interview she claims she was told that she ranked as the top applicant among all of the qualified applicants. (*Id.* ¶ 14.) Joshua Hardy, a young male, was also interviewed for this position, despite the fact that he did not meet the qualifications required for the position. (*Id.* ¶ 15.) LDH did not hire anyone into the position that year, but instead left the position unfilled. (*Id.* ¶ 21.)

In February of 2013, LDH posted a second job announcement for the PM4 Position. (*Id.* ¶ 25.) LDH closed the posting on February 18, 2013; on the next day, Ruby Triggs—the OBH Human Resources Director at that time—allegedly told Plaintiff that the decision had already been made the year before and that Hardy would be placed into the position as he had previously been

promised. (*Id.* ¶ 26.) According to Plaintiff, she told Triggs that the only reason Hardy would being promoted to the PM4 Position was because he was a young, white male, and that, if LDH ultimately hired him into that position, she would take legal action. (*Id.* ¶¶ 27, 29.) Subsequently, LDH again decided to leave the PM4 Position open for the remainder of 2013. (*Id.* ¶ 33.) Joshua Hardy was never promoted to the PM4 Position. Plaintiff claims that, at some point thereafter, the PM4 Position was filled by two other males, both of whom she argues were less qualified than her for the role. (*Id.* ¶¶ 40, 44–45.)

To support her Title VII claims, Plaintiff also points to other discrete acts, including: (1) other positions she applied for that LDH subsequently filled with males, who she argues were less qualified than her; (2) her move to the Office of the Secretary Program Integrity ("PI") section[3] of LDH in 2014, where she argues the retaliation against her became significantly worse, (*id.* ¶¶ 50, 52); (3) being forced by her supervisors in PI to engage in gender discrimination by being forced to hire an unqualified male, (*id.* ¶¶ 67–69, 73); and (4) her transfer to a position with the Louisiana Division of Administration on November 20, 2017, which she argues amounted to a constructive discharge, (*Pl. OSMF*, Doc. 68-1 at 2). Additionally, in support of her Equal Pay Act claims, Plaintiff maintains that several male employees were treated differently than her in terms of compensation and raises.

When necessary and relevant to the *Motion*, the Court will elaborate upon these facts in more detail in its analysis below.

## IV.    Summary Judgment Standard

---

[3] The parties' accounts of where Plaintiff worked within LDH in 2014 may be in dispute. Defendant submits that Plaintiff worked as a Medicaid PM2 effective August 25, 2014. (*Def. SMF*, ¶ 2, Doc. 58-1.) Plaintiff attempts to deny this statement of fact, but in her explanation supporting that denial, she does not specifically claim that she was not a Medicaid PM2 as of August 25, 2014. (*See Pl. OSMF*, ¶ 2, Doc. 68-1.) However, other portions of Plaintiff's affidavit indicate that she was moved to the PI section sometime in 2014. (Pl. Aff., ¶ 50, Doc. 68-2.) The Court need not elaborate further on this seemingly disputed fact because, as explained below, Plaintiff's Title VII claims arising out of her alleged move to the PI section are time-barred.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)). However, "the movant 'need not *negate* the elements of the nonmovant's case.' " *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.") (emphasis in original)). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by

unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted).

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (internal citations omitted).

## V.   Discussion

### A.  Exhaustion of Administrative Remedies under Title VII

"A plaintiff asserting a claim under Title VII must exhaust administrative remedies before pursuing the claim in district court." *Bracken v. Welborn*, No. 20-72, 2021 WL 237693, at *4 (M.D. La. Jan. 25, 2021) (Dick, C.J.) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); *Davis v. Fort Bend Cty.*, 893 F.3d 300, 303 (5th Cir. 2018) (citing 42 U.S.C. § 2000e–5(e)(1))). Administrative exhaustion occurs when a plaintiff files a timely charge with the Equal Employment Opportunity Commission ("EEOC") and subsequently receives from the EEOC a statutory notice of the right to sue the employer named in the charge. *Id.* (citations omitted); 42 U.S.C. § 2000e–5(e)(1). Thereafter, the plaintiff has ninety days from receipt of the right-to-sue notice to file an action in court. *Taylor*, 296 F.3d at 379 (citations omitted).

In this case, Plaintiff properly filed her lawsuit within ninety days of receiving notice of her right to sue. (*See* Doc. 1-4.) At issue is whether she exhausted her administrative remedies for each of her Title VII claims by first filing a timely charge with the EEOC reporting those claims.

### 1. Prescription

The first issue is whether some of Plaintiff's Title VII claims are time-barred. As stated above, under Title VII, a plaintiff must file a timely EEOC charge describing the unlawful employment action complained about before filing suit. 42 U.S.C. § 2000e–5(e)(1). The time-period applicable to determining whether the plaintiff filed a "timely" EEOC charge differs depending on the state in which it is filed. "Generally, Title VII's enforcement provisions require that an EEOC charge must be filed within 180 days after the alleged unlawful employment practice has occurred." *Fontenot v. Bd. of Supervisors of Louisiana State Univ.*, No. 20-8, 2022 WL 2709006, at *7 (M.D. La. July 12, 2022) (Dick, C.J.) (citing 42 U.S.C. § 2000e–5(e)(1)). "However, in a 'deferral state,' such as Louisiana, a claimant has an extended, 300-day period to file an EEOC charge." *Id.* (citing *Conner v. Louisiana Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007)). For purposes of filing a timely charge under Title VII, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' " *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

This timing requirement is imposed on all Title VII claims regardless of "whether they are based on allegations of disparate treatment, disparate impact, hostile work environment, or retaliation[.]" *Clark v. City of Alexandria*, No. 20-01581, 2022 WL 822912, at *8 (W.D. La. Feb. 23, 2022), *report and recommendation adopted*, 2022 WL 816793 (W.D. La. Mar. 16, 2022). "Filing a timely charge is a prerequisite to having an actionable claim." *Santos v. Baton Rouge Water Works Co.*, No. 18-1098, 2021 WL 1227875, at *11 (M.D. La. Mar. 31, 2021) (deGravelles,

J.) (quoting *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 328 (5th Cir. 2009)). Consequently, "any claims arising more than 300 days prior to the filing of an EEOC charge are time-barred." *Id.* (citing 42 U.S.C. § 2000e–5(e)(1)).

In this case, Plaintiff filed her initial charge of discrimination with the Louisiana Commission on Human Rights ("LCHR") and the EEOC on December 29, 2015, (Doc. 1-2), and subsequently filed an amended charge on June 21, 2016, (Doc. 1-3).[4] Defendant correctly points out that 300 days prior to the initial charge's filing date is March 4, 2015, and 300 days prior to the amended charge's filing date is August 26, 2015; however, Defendant fails to definitively identify the filing date from which it contends the prescriptive period should date back. (Doc. 58-2 at 4.) Instead, "using March 4, 2015 as the furthest possible cutoff for prescription purposes," Defendant maintains that—at the very least—no alleged discriminatory or retaliatory acts occurring before that date can serve as the basis for Plaintiff's Title VII claims because they are time-barred. (*Id.*)

Defendant is correct in that any discrimination or retaliation claims that arose more than 300 days *before* the filing of Plaintiff's EEOC charge are time-barred. Under Title VII, the employee must file an EEOC charge describing the actions made unlawful under Title VII within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). Plaintiff's original EEOC charge, which was filed on December 29, 2015, described actions that occurred as early as 2012. Because 300 days before that filing is March 4, 2015, the only unlawful employment practices described therein that are actionable are those that occurred on or after March 4, 2015.

---

[4] Hereafter, the Court will refer to these charges as the "EEOC charges," but acknowledges that in Louisiana, such charges are filed with both the LCHR and the EEOC.

Because the amended EEOC charge was filed on June 21, 2016, its cut-off date for actionable claims is later: only unlawful employment practices described therein that occurred on or after August 26, 2015 are actionable. However, this prescriptive period does not apply to allegations already set forth in Plaintiff's original EEOC charge, as Plaintiff has already satisfied administrative exhaustion for those claims. In other words, to the extent the amended charge mirrors the original charge's allegations, the amended charge is immaterial to the prescription issue; only conduct occurring on or after March 4, 2015 is actionable. Here, with the exception of the two additional allegations discussed below, the amended EEOC charge does not set forth any new claims under Title VII. Instead, it mostly elaborates on the allegations already contained in the original charge. (*See, e.g.*, Doc. 1-2 at 4, 10; *cf* Doc. 1-3 at 4, 10.) Therefore, with respect to the actions described in the amended EEOC charge that were already reported in Plaintiff's original EEOC charge, no detailed analysis is necessary. Only conduct occurring on or after March 4, 2015 is actionable, and claims for conduct occurring before that date are time-barred.

The only additional, substantive allegations set forth in the amended charge concern conduct that occurred in 2016, after the original charge was filed. (*See* Doc. 1-3 at 26 (arguing Defendant discriminated and retaliated against her by filling the "original DHH-OBH PM4 Position . . . in or about February 2016"); *see also id.* at 27 (arguing same and explaining that she applied for this position countless times, including for the last time on January 25, 2016).) As stated above, Plaintiff filed her amended EEOC charge on June 21, 2016. Thus, because the amended charge describing these instances was filed within 300 days after their occurrence, these additional allegations of LDH conduct are actionable. As a result, Plaintiff's Title VII claims relying on these specific actions are deemed timely.

In sum, any alleged act of discrimination or retaliation occurring before March 4, 2015 is time-barred under Title VII. Therefore, the Court finds that summary judgment is warranted on these claims. Additionally, because no further action by Plaintiff could cure this defect, the Court will dismiss with prejudice all Title VII claims based on actions occurring before that date. *See, e.g.*, *Santos*, 2021 WL 1227875, at \*14, \*22 (finding that the plaintiff's Title VII and LEDL discrimination claims were time-barred and thus dismissing them with prejudice).

### 2. Failure to File a Subsequent EEOC Charge

Next at issue is whether Plaintiff properly exhausted her claims for discrimination and retaliation under Title VII by filing an EEOC charge on those claims. Defendant argues that LDH actions occurring *after* the date Plaintiff's amended EEOC charge was filed are similarly not actionable under Title VII because (a) filing an EEOC charge is a prerequisite to having an actionable claim, and (b) no EEOC charge based on those acts was ever filed. (Doc. 58-2 at 4–5.) In short, the Court agrees with Defendant's position as far as it relates to Plaintiff's Title VII discrimination claims. However, for reasons discussed in more detail below, some of Plaintiff's retaliation claims for which she did not file an EEOC charge are nevertheless actionable. Whether she properly exhausted her discrimination claims will be taken up first.

For administrative exhaustion, it is not only important that the EEOC charge is filed in a timely manner; it is equally important that the charge covers the claims now forming the basis of the plaintiff's lawsuit, as "a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). "Because a plaintiff's Title VII claim must be administratively exhausted, a subsequent suit must be limited to the claims made in the

employee's initial EEOC charge or any type of discrimination 'like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.' " *Bracken v. Welborn*, No. 20-72, 2021 WL 237693, at *4 (M.D. La. Jan. 25, 2021) (Dick, C.J.) (citations omitted). The Fifth Circuit "interprets what is properly embraced in review of a Title–VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.' " *Pacheco*, 448 F.3d at 789 (quoting *Sanchez*, 431 F.2d at 466); *see McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 274–75 (5th Cir. 2008) (explaining that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.").

Here, Plaintiff's amended EEOC charge includes allegations of conduct constituting discrimination and retaliation that occurred as late as June 20, 2016—the day before she filed her amended charge. (*See* Doc. 1-3 at 1.) Even when construing her EEOC complaint liberally, as the Fifth Circuit requires, the scope of the EEOC investigation on both of her charges could not have included events occurring after those charges were filed. The Fifth Circuit dealt with this same issue in *Sapp v. Potter*, 413 F. App'x 750 (5th Cir. 2011). There, the plaintiff filed a total of four EEOC charges, but she filed her third and fourth EEOC charges after bringing her lawsuit in the district court. *Id.* at 751. The district court dismissed the plaintiff's claims that were based on the facts alleged in her third and fourth EEOC complaints on the grounds that she had not exhausted her administrative remedies at the time of filing her lawsuit. *Id.* at 751–52. In affirming that dismissal, the Fifth Circuit explained:

> A necessary prerequisite to exhausting administrative remedies is having begun the administrative process. [*Pacheco*, 448 F.3d at 788.] Because Sapp had not even

> filed the third and fourth EEO complaints at the time that she filed the complaint in
> the district court, Sapp's case cannot be permitted to proceed.
> . . .
> As the district court emphasized, EEO1 and EEO2 relate solely to Sapp's contention
> that the Postal Service failed to accommodate the restrictions imposed by her
> alleged medical disability. EEO3 and EEO4 relate to her being wrongfully
> terminated as a result of her medical disability. Merely because both sets of facts
> involve the same alleged motive does not mean that the third and fourth EEO
> complaints were within the scope of the first two investigations. The first two
> investigations were already concluded at the time Sapp's employment was
> terminated. A person cannot reasonably expect a concluded investigation to include
> an event that has not yet occurred.

*Id.* at 752.

On this issue, *Sapp v. Potter*, 413 F. App'x 750 (5th Cir. 2011) is directly on point. Plaintiff's Title VII claims for discriminatory conduct occurring *after* the filing of the amended EEOC charge likewise do not satisfy the exhaustion of administrative remedies requirement because a person cannot reasonably expect that the scope of the EEOC investigation would include events that had not yet occurred. Here, Plaintiff's allegations include conduct occurring after June 20, 2016, but no EEOC charge reporting that later conduct was ever filed. Put another way, Plaintiff's two EEOC charges did not—and could not—include claims for conduct occurring after that date, and "[a]ny claims not described in the EEOC charge are not properly before the Court." *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864, 874 (M.D. La. 2014), *aff'd sub nom.*, *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 620 F. App'x 215 (5th Cir. 2015). Therefore, as to the claims that Defendant violated Title VII based on conduct occurring after June 20, 2016, Plaintiff has not exhausted her administrative remedies. Accordingly, the Court cannot consider those alleged instances for purposes of Plaintiff's discrimination claims under Title VII.

Additionally, although neither party raised the issue, the Court is cognizant that the continuing violations doctrine, if applicable here, would save Plaintiff's untimely discrimination

claims. In sum, no exquisite analysis is necessary on this point; the relevant case law shows that the continuing violations doctrine is inapplicable here because Plaintiff's claims are based on discrete acts only. "The Supreme Court has defined 'discrete acts' as easily identifiable incidents, including termination, failure to promote, denial of transfer, and refusal to hire." *Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 349 (5th Cir. 2010) (citations omitted). Plaintiff's discrimination claims only concern the "easily identifiable incidents" described above and, as such, are not part of any continuing violation. *Id.* Thus, for the reasons stated above, the Court finds that summary judgment is warranted on Plaintiff's Title VII discrimination claims arising after June 20, 2016 for failure to exhaust administrative remedies. As a result, the only actionable Title VII claims for discrimination in this case are those that arose between March 4, 2015, and June 20, 2016. As a result, the Court will only consider actions occurring during that time period as a proper basis for those claims; all discrimination claims arising outside of that time period are barred.[5]

Again, like Plaintiff's discrimination claims, her retaliation claims under Title VII based on acts that occurred before March 4, 2015 are time-barred.[6] However, with respect to certain claims of retaliation arising *after* an EEOC charge has been filed, an employee need not file a

---

[5] Though by slightly different reasoning, Defendant comes to the same conclusion as the Court: all claims arising before March 4, 2015 and after June 20, 2016 are time-barred. (Doc. 58-2 at 4.) Plaintiff did not respond to this argument or address the issue of exhaustion of administrative remedies in any manner. Consequently, in addition to the above reasons, dismissal of these claims is warranted here because any contrary argument by Plaintiff on this issue is waived. *See JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (finding that claims could be deemed waived for failure to timely oppose); *see also JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (stating that, "[t]o avoid waiver, a party must identify relevant legal standards and 'any relevant Fifth Circuit cases' " and holding that, because appellant "fail[ed] to do either with regard to its underlying claims, ... those claims [were] inadequately briefed and therefore waived.") (citations omitted); *United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010) (defendant's failure to offer any "arguments or explanation ... is a failure to brief and constitutes waiver.").

[6] The Court need not discuss the continuing violations doctrine here, as "[t]he Fifth Circuit has held that the continuing violations doctrine does not apply to claims of retaliation because 'retaliation is, by definition, a discrete act, not a pattern of behavior.' " *Santos v. Baton Rouge Water Works Co.*, No. 18-1098, 2021 WL 1227875, at *14 (M.D. La. Mar. 31, 2021) (deGravelles, J.) (citing *Hamic v. Harris Cnty., W.C. & I.D. No. 36*, 184 F. App'x 442, 447 (5th Cir. 2006)).

subsequent EEOC charge reporting that retaliation to have an actionable claim. In *Gupta v. East Texas State Univ.*, 654 F.2d 411 (5th Cir. 1981), a professor filed an EEOC charge for discrimination and then filed a second charge claiming his employer retaliated against him for filing the first charge; thereafter, he filed suit. *Id.* at 412–413. Subsequently, he was informed that his teaching contract would not be renewed, so he claimed in his lawsuit an additional instance of retaliation based on the termination. *Id.* at 413. He did not, however, file another EEOC charge reporting the additional instance of retaliation. *Id.* In addressing his failure to file another EEOC charge, the Fifth Circuit concluded:

> [W]e hold that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.
>
> There are strong practical reasons and policy justifications for this conclusion. It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case[,] a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII.

*Id.* at 414 (citations omitted).

The applicability of the *Gupta* exception, however, is limited in two ways. The first is obvious from *Gupta* itself: the retaliation claim at issue must "grow[] out of an earlier charge" that was previously filed with the EEOC. *Id.* Hence, it is clear that "*Gupta* and its rationale are not applicable when . . . the alleged retaliation occurs *before* the filing of the EEOC charge." *Eberle v. Gonzales*, 240 F. App'x 622, 628 (5th Cir. 2007).

The second constraint on *Gupta*'s applicability is that the exception extends to unexhausted claims for retaliation only, not unexhausted claims involving both retaliation and discrimination. For example, in *Simmons-Myers v. Caesars Ent. Corp.*, 515 F. App'x 269 (5th Cir. 2013), a female

employee filed a charge with the EEOC claiming her employer discriminated against her based on her sex in a variety of ways, such as taking male employees to dinner and imposing different sets of sales goals for them. *Id.* at 271. After filing this charge, she was terminated, but she never filed another EEOC charge related to her termination before filing suit. *Id.* at 272. As for the plaintiff's Title VII claims for gender discrimination and retaliation that were based on her termination, the court found she failed to exhaust those claims because she never filed an EEOC charge on them and, as such, dismissed them without prejudice. *Id.* at 273.

Importantly, the Fifth Circuit declined to apply the *Gupta* exception to save her retaliation claim even though it ostensibly grew out of the facts alleged in her earlier EEOC charge:

> But this court has not applied the *Gupta* exception to claims in which both retaliation and discrimination are alleged. *See Gupta*, 654 F.2d at 414 (creating exception for a claim involving only retaliation "growing out of an earlier charge," not a retaliation and discrimination claim simultaneously alleged); *see also Scott v. Univ. of Miss.*, 148 F.3d 493, 514 (5th Cir. 1998) (holding that *Gupta* "is limited to retaliation claims due to the special nature of such claims"), *abrogated on other grounds by Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Sapp v. Potter*, 413 [F. App'x] 750, 752–53 (5th Cir. 2011) ("Because the *Gupta* exception is premised on avoiding procedural technicalities, it has only been applied to retaliation claims alone [and not] claims in which both retaliation and discrimination are alleged."). Otherwise, [the plaintiff] would be required to return to the EEOC and exhaust her administrative remedies with respect to her discrimination claim, while proceeding with litigation on her retaliation claim. Permitting simultaneous proceedings such as these for the same inciting event would "thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008); *see also Sapp*, 413 [F. App'x] at 753.

*Id.* at 273–74.

The *Simmons-Myers* court noted that "*Gupta* may no longer be applicable" following the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) and that "[o]ur sister circuits appear to be split on this issue." *Id.* at 273 n.1 (gathering authorities and discussing various circuits' treatment of whether *Morgan* abolished a *Gupta*-like exception)

(citations omitted). Ultimately, the Fifth Circuit declined to definitively resolve the question of whether *Gupta* has survived *Morgan*, *id.*, but has since continued to recognize it as valid. *See Phillips v. Caris Life Scis., Inc.*, 715 F. App'x 365, 370–71 (5th Cir. 2017) (finding the *Gupta* exception did not apply because "this court has repeatedly held that the *Gupta* exception only applies when the new claim is one of retaliation; *Gupta* does not apply to cases in which both retaliation and discrimination claims are alleged") (citations omitted).

As this Court has previously explained, although "*Gupta* has been called into question, it remains good law. It has never been overruled and has, as demonstrated above, been applied by several circuit courts." *Mitchell v. Univ. of Louisiana Sys.*, 154 F. Supp. 3d 364, 403 (M.D. La. 2015) (deGravelles, J.). Thus, "until the Supreme Court or Fifth Circuit reassess the holding in *Gupta*, this Court is bound to follow its holding." *Id.* (quoting *Finnie v. Lee Cty., Miss.*, 907 F. Supp. 2d 750, 786–88 (N.D. Miss. 2012)); *see also Williams v. McAleenan*, No. 19-12841, 2021 WL 6496851, at *3 (E.D. La. Jan. 12, 2021) (explaining that the Fifth Circuit does "not appl[y] the *Gupta* exception to claims in which both retaliation and discrimination are alleged—not even when such claims are brought in the *alternative*") (citing *Simmons-Myers*, 515 F. App'x at 273–74; *Gupta*, 654 F.2d at 414; *Sapp*, 413 F. App'x at 752–53).

With these principles in mind, the Court will now assess whether Plaintiff's Title VII claims for retaliation are actionable. In her opposition, Plaintiff claims that Defendant retaliated against her by: (1) transferring her to the PI section, where she worked under a male who created a hostile work environment; (2) denying her over 100 promotions, even though she was often the most qualified candidate; (3) "ultimately filling the PM4 Position with two other males . . . who were way less qualified than the female applicants[;]" (4) "trying to make her discriminate against other women by hiring a young, unqualified male;" and (5) "[u]ltimately, forc[ing] [her] out of

LDH entirely." (Doc. 68 at 15.) The Court will examine each of these alleged instances of retaliation in turn.

As for Plaintiff's transfer to the PI section, her affidavit shows that she was moved to this section of LDH in 2014. (Pl. Aff., ¶ 50, Doc. 68-2.) Again, she filed her first EEOC charge on December 29, 2015. As explained above, any claims arising before March 4, 2015—that is, more than 300 days before the filing of that charge—are time-barred. Thus, Plaintiff has no actionable retaliation claim as to her transfer to the PI section.

As for Plaintiff's claim that Defendant retaliated against her by denying her over 100 promotions, the same conclusion is warranted with respect to the denials that occurred before March 4, 2015. Those claims are time-barred. As for the denials that occurred after June 20, 2016, no EEOC charge was filed on those claims. Hence, the retaliation claims based on those denials are unexhausted and thus must meet the *Gupta* exception to be actionable. Plaintiff claims that LDH "retaliated against [her] and/or continued to discriminate against [her] by denying [her] dozens of promotions." (Pl. Aff., ¶ 104, Doc. 68-2.) The Fifth Circuit "has repeatedly held that the *Gupta* exception only applies when the new claim is one of retaliation[.]" *Phillips*, 715 F. App'x at 370. That court "has not applied the *Gupta* exception to claims in which both retaliation and discrimination are alleged—not even when such claims are brought in the *alternative*." *Williams*, 2021 WL 6496851, at *3 (citing *Simmons-Myers*, 515 F. App'x at 273–74; *Gupta*, 654 F.2d at 414; *Sapp*, 413 F. App'x at 752–53).

Plaintiff uses the denials of promotions as a basis for both her discrimination and retaliation claims under Title VII. Because Plaintiff's discrimination claims for denials occurring after June 20, 2016 have not been exhausted, the *Gupta* exception cannot allow her retaliation claims based on those same occurrences to survive. To find otherwise would thwart the administrative process

by allowing Plaintiff to proceed with litigation on her retaliation claims while also requiring her to return to the EEOC and report those same instances for discrimination. *Simmons-Myers*, 515 F. App'x at 274. Therefore, the Court finds that Plaintiff's retaliation claims based on denials occurring after June 20, 2016 are not actionable for failure to exhaust administrative remedies. Consequently, of the over 100 promotions for which Plaintiff applied and was denied, only those occurring between March 4, 2015 and June 20, 2016 can form the basis for her Title VII retaliation claim. These remaining claims will be analyzed further below.

Plaintiff next claims that LDH retaliated against her by filling the PM4 Position with two males who were less qualified than her. (Doc. 68 at 15.) She does not specifically pinpoint who these individuals are, but indicates in other parts of her opposition and evidence that the PM4 Position she originally applied for in 2012 was filled by Michael Carrone, and later, by Bryan Hardy. (Doc. 68 at 7, 13; Pl. Aff., ¶ 103, Doc. 68-2.) Carrone was hired into the PM4 Position in March of 2016. (Doc. 68 at 13; Pl. Aff., ¶ 103, Doc. 68-2.) Thereafter, Plaintiff filed her amended EEOC charge referencing this incident. (Doc. 1-3 at 23.) Thus, Plaintiff has exhausted her retaliation claim based on LDH filling the PM4 Position with Carrone, and the Court will examine the substance of that claim further below.

However, while Plaintiff indicates that Bryan Hardy was hired into the PM4 Position at some point after Carrone, neither her evidence nor briefs show when exactly Bryan Hardy filled this position. (*See* Doc. 68 at 7.) Moreover, her amended EEOC charge makes no mention of Bryan Hardy. (*See* Doc. 1-3.) Thus, Plaintiff has not met her burden of showing she exhausted her retaliation claim as to Bryan Hardy. As such, dismissal of this claim is warranted.[7]

---

[7] The Court notes that if Bryan Hardy was hired into the PM4 Position after June 20, 2016—which is very likely considering the fact that the position was filled by his predecessor, Carrone, in March of 2016—Plaintiff's retaliation claim as to Bryan Hardy would still be dismissed because (a) she failed to file an EEOC charge reporting that

As for Plaintiff's claim that Defendant retaliated against her by "trying to make her discriminate against other women by hiring a young, unqualified male," (Doc. 68 at 15), her affidavit indicates that this instance occurred in April of 2015, (Pl. Aff., ¶ 66, Doc. 68-2). Because this alleged retaliation occurred within the 300-day period before Plaintiff filed her initial EEOC charge, and that charge includes facts pertaining to this allegation, (*see* Doc. 1-2 at 16), the Court finds that her retaliation claim relating to this conduct is actionable. Accordingly, this claim is properly before the Court and will be examined further below.

Finally, in arguing Defendant retaliated against her in violation of Title VII, Plaintiff claims that Defendant "forced [her] out of LDH entirely." (Doc. 68 at 15.) More specifically, Plaintiff alleges that LDH's treatment of her throughout the years became so unfavorable that she decided she "had no choice" other than to "leave the area of healthcare" on November 20, 2017. (*Id.* at 10.) For this reason, she argues that "LDH constructively discharged [her] on November 20, 2017." (*Id.* (citing Pl. Aff., ¶ 115, Doc. 68-2).) This alleged instance of retaliation occurred after both of Plaintiff's EEOC charges were filed, and Plaintiff did not file a subsequent EEOC charge reporting this claim. Hence, Plaintiff failed to exhaust this claim and, as such, she can only seek relief for it if the exception to the exhaustion requirement applies.

As explained above, under the *Gupta* exception, a plaintiff need not "exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge." *Gupta*, 654 F.2d at 414. Here, Plaintiff claims that she felt she had no choice but to leave LDH because the "years of . . . blackballing, discrimination, and retaliation" became "too much" for her to handle, (Doc. 68 at 10), and her EEOC charges detail acts she alleges constitute discrimination and retaliation over a span of several years. For these reasons, the Court finds that Plaintiff's

---

retaliation, and (b) the *Gupta* exception cannot apply, as Plaintiff claims that hiring Bryan Hardy into this position constituted both retaliation and discrimination. (*See* Doc. 68 at 7.)

retaliation claim based on the alleged constructive discharge "grow[s] out of" her earlier EEOC charges. *Gupta*, 654 F.2d at 414. Additionally, she does not appear to claim the constructive discharge constitutes both discrimination and retaliation in violation of Title VII. Therefore, Plaintiff is entitled to the *Gupta* exception on this claim.

For the foregoing reasons, summary judgment is granted on all of Plaintiff's Title VII discrimination claims arising after June 20, 2016 based on failure to exhaust. In addition, summary judgment is granted on those Title VII retaliation claims arising after June 20, 2016 that the Court found—as detailed above—were not actionable based on failure to exhaust. Because non-exhaustion due to failing to file an EEOC charge is not a jurisdictional defect, *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019), "the appropriate disposition of Title VII claims that have not been exhausted is dismissal without prejudice." *Dowdell v. Culpepper & Assocs. Sec. Servs., Inc.*, No. CV 19-11410, 2020 WL 5095274, at *2 n.26 (E.D. La. Aug. 28, 2020) (dismissing the unexhausted Title VII claims without prejudice, allowing the plaintiff to later return to court after she exhausted her administrative remedies, but emphasizing that the court "ha[d] not [yet] made a finding as to whether any claim filed after exhaustion would be timely.") Accordingly, with respect to all Title VII claims arising after June 20, 2016 that the Court finds not actionable for failure to exhaust, those claims will be dismissed without prejudice.

### B.   Title VII Claims for Discrimination

#### 1. General Law

Title VII prohibits discrimination by employers "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). "Intentional discrimination under Title VII can be proven by either direct or circumstantial evidence." *Santos v. Baton Rouge Water*

*Works Co.*, No. 18-1098, 2021 WL 1227875, at *15 (M.D. La. Mar. 31, 2021) (deGravelles, J.) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). "For evidence to be 'direct,' it must, if credible, prove the fact in question without inference or presumption." *Santos*, 2021 WL 1227875, at *15 (citing *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted)). In situations like the case at bar, where a plaintiff has not presented any direct evidence of discrimination, "the Court shall employ the familiar burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Id.*; *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1984) (stating, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination").

The burden-shifting framework requires Plaintiff to first establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *Santos*, 2021 WL 1227875, at *15 (citing *McDonnell Douglas*, 411 U.S. at 801–03). "A prima facie case is established once the plaintiff has proven that [s]he: (1) is a member of a protected class; (2) was qualified for [the] position [she sought]; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class; or in the case of disparate treatment, show that others similarly situated were treated more favorably." *Id.*; *see also Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005). If established, the *prima facie* case "raises a presumption of discrimination," and the burden then shifts to the defendant to rebut that presumption "by articulating a legitimate, nondiscriminatory reason for its actions." *Santos*, 2021 WL 1227875, at *15 (citing *McDonnell Douglas*, 411 U.S. at 802) (citations omitted). "The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment." *Alvarado v. Tex. Rangers*,

492 F.3d 605, 611 (5th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (cleaned up)).

Once the defendant satisfies their burden by proffering a non-discriminatory reason for the adverse employment action, "the *prima facie* case is dissolved, and the burden shifts back to the plaintiff" to create a genuine issue of material fact that either: (1) the defendant's "proffered reason is not true[,] but is instead a pretext for discrimination;" or (2) the defendant's "reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id.* (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)); *see also Santos*, 2021 WL 1227875, at *15 (describing the plaintiff's options as either proceeding under the "pretext alternative" or the "mixed-motives alternative") (citations omitted). Plaintiff has not specified whether she proceeds under a pretext theory or a mixed-motives theory in this case. Regardless, however, throughout the shifting back and forth of "intermediate evidentiary burdens" under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143 (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

### 2. Parties' Arguments

#### a. Defendant's Original Memorandum (Doc. 58-2)

Defendant points out that Plaintiff has the burden of proving a *prima facie* case and argues that Plaintiff has not and cannot meet that burden. Then, Defendant relies on the Guttzeit affidavit, (Ex. D-1, Doc. 58-3), to summarize what positions Plaintiff applied for and what individuals filled those positions based on gender. (*See* Doc. 58-2 at 7–8.) According to Defendant, between March 4, 2015 and June 21, 2016, Plaintiff applied to LDH for seventeen Program Manager positions, only nine of which were subsequently filled. (*Id.* at 7.) Of the nine people LDH filled those

positions with, five were female and four were male. (*Id.*) Defendant continues in the same fashion with respect to the six executive or administrative positions it contends Plaintiff applied to at LDH during this time period. (*Id.* at 8.) According to Defendant, it filled five of those positions, and four of the individuals who filled those positions were female while only one was male. (*Id.*)

Based on this data, Defendant concludes, "it is clear that Plaintiff will not be able to create a genuine issue of material fact to show that LDH failed to transfer her to a new position or promote her on the basis of gender." (*Id.*) Defendant does not mention why it failed to hire or promote Plaintiff to any of the positions, but only provides these statistics from the Guttzeit affidavit.

### b. Plaintiff's Opposition (Doc. 68)

Plaintiff does not cite any law concerning her Title VII claims for discrimination based on gender. Instead, her opposition repeats the testimony set forth in her affidavit and avers that, based on those facts, summary judgment is not appropriate. (*See* Doc. 68 at 12–14.) As discussed further below, she specifically claims that LDH discriminated against her through its treatment of another male employee, Joshua Hardy, and later by promoting Michael Carrone and then Bryan Hardy into the PM4 Position. (*Id.*)

### c. Defendant's Reply (Doc. 69)

In response, Defendant argues that Plaintiff failed to present admissible evidence showing LDH failed to transfer her or promote her for gender-related discriminatory purposes. (Doc. 69 at 3.) According to Defendant, the evidence it presented shows the opposite. The evidence Defendant points to need not be discussed here, as it is largely a repeat of the same data summarized above.

### 3. Analysis

To overcome a motion for summary judgment on her remaining discrimination claims, Plaintiff first must establish a *prima facie* case of discrimination. *Santos*, 2021 WL 1227875, at

*15 (citing *McDonnell Douglas*, 411 U.S. at 801–03). To do so, she must prove that: (1) she is a member of a protected class; (2) she was qualified for the position(s) sought; (3) she was subjected to an adverse employment action by LDH; and (4) she "was replaced by someone outside the protected class; or in the case of disparate treatment, . . . that others similarly situated were treated more favorably." *Id.*; *see also Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005).

Although Plaintiff claims generally throughout her opposition and affidavit that she was discriminated against in various ways, only a handful of those instances can constitute "adverse employment actions" for purposes of her discrimination claims. An adverse employment action is "a judicially-coined term referring to an employment decision that affects the terms and conditions of employment." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014) (citations omitted). The Fifth Circuit has "held that adverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Id.* (citations omitted). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Id.* (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004)).

The only conduct that is actionable for purposes of Plaintiff's discrimination claim and constitutes an "ultimate employment decision" includes her claims that she was discriminated against by being denied promotions to about thirty job positions within LDH during the actionable time period. Even then, however, Plaintiff fails to provide essentially any information on any position she applied for except for the PM4 positions.[8] Consequently, only the denial of promotion to the PM4 positions will be analyzed.

---

[8] Plaintiff distinguishes between "the PM4 Position," which is the original position she began applying for in 2012, and other PM4 positions she applied for in other sections. This distinction is irrelevant because, as explained below, she fails to identify appropriate comparators for any of the referenced positions. Still, for the sake of clarity, the Court notes the distinction and refers to them collectively as "PM4 positions" when not discussing a particular one.

### 4. The PM4 Positions and Appropriate Comparators

First, it is clear that Plaintiff, as a female, is a member of a protected class under Title VII. As for the second requirement, it appears that Plaintiff was highly qualified for the PM4 position based on the statements in her affidavit. (Pl. Aff., ¶¶ 6, 10, 12, 14, Doc. 68-2).) In addition, she was subjected to an adverse employment action because she was denied promotion to PM4 positions on multiple occasions. Primarily at issue here is whether Plaintiff has satisfied the fourth element required to establish her *prima facie* case. The Court finds she has not.

More specifically, Plaintiff has failed to satisfy the fourth prong because she "has failed to identify a proper comparator—someone 'similarly situated' who was 'treated more favorably.' " *Santos*, 2021 WL 1227875, at *17 (quoting *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005)). "Courts within the Fifth Circuit define 'similarly situated' narrowly." *Id.* (citing *Horton v. G4S Secure Solutions (USA), Inc.*, No. 16-544, 2018 WL 1997535 at *5 (M.D. La Apr. 27, 2018) (citing *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 593 (S.D. Tex. 2012); *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 856–57 (S.D. Tex. 2010))).

In order to show that an employee is similarly situated to another, the Fifth Circuit requires the employee proffering another as a comparator to "demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.' " *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citation omitted). The Fifth Circuit has explained the applicable standard as follows:

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference

29

in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Id.* (citations omitted) (emphasis in original).

In sum, the Court finds that Plaintiff has failed to establish her *prima facie* case because she has not shown that any similarly situated male employees at LDH were treated more favorably than her. Plaintiff's summary judgment evidence mentions four fellow male employees who were promoted to a PM4 position over her: (1) Michael Carrone, (2) Bryan Hardy, (3) Joseph Foxhood, and (4) Tyler Carruth.[9] However, as explained below, Plaintiff has not provided enough information about these employees for the Court to decipher whether they are similarly situated under the Fifth Circuit's "nearly identical" test.

The adverse employment action Plaintiff claims she was subjected to is that LDH denied her a promotion to the PM4 Position and other PM4 positions on various occasions. The dissimilar employment actions being compared are the promotions of the above-mentioned male employees into those positions. Because neither party has offered any purported reason or explanation for why Plaintiff was denied the promotions, the Court cannot ascertain what "conduct" by Plaintiff allegedly "drew the adverse employment decision[.]" *Lee*, 574 F.3d at 260. Nevertheless, the Court finds that Plaintiff has still failed to present sufficient evidence for the Court to determine whether the treatment of the proffered comparators was taken under "nearly identical circumstances." *Id.*

As explained above, "[t]he employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined

---

[9] At one point, in her opposition, Plaintiff states that Joshua Hardy was given the PM4 Position over her. (Doc. 68 at 12.) However, her own evidence contradicts this statement, as does another portion of her opposition. (*See id.* at 13 (arguing "LDH may claim that since Joshua Hardy did not get the PM4 Position, there was no discrimination. This is laughable because LDH continued to discriminate . . . by eventually filling it . . ." with other males).)

by the same person, and have essentially comparable violation histories." *Id.* (citations omitted). In the case at hand, the only information Plaintiff provides on the individuals she suggests are comparators is as follows.

In March of 2016, Michael Carrone was promoted to the PM4 Position that was denied to Plaintiff on ten separate occasions. (Pl. Aff., ¶ 103, Doc. 68-2; *see also* Doc. 68 at 13.) Plaintiff claims that she was more highly qualified for the position than Carrone, as he only had a bachelor's degree in English and "little health care or technical experience." (Pl. Aff., ¶ 103, Doc. 68-2.) After Carrone's departure, Plaintiff avers that another fellow male employee, Bryan Hardy, was promoted to the PM4 Position and suggests that he currently holds that position: "To this day . . . the PM4 Position to which [Plaintiff] was denied promotion . . . is filled by a young male less qualified than her (Bryan Hardy) . . ." (Doc. 68 at 7 (citing Pl. Aff., ¶ 40, Doc. 68-2); *see also* Doc. 68 at 13.)

Plaintiff also claims that Joseph Foxhood, a male, was promoted over her to "DHH OPH" Program Manager 4—another PM4 position—on June 20, 2016. (Pl. Aff., ¶ 107, Doc. 68-2 (listed as position number 52 in the list of the 100 total positions for which Plaintiff applied).) According to Plaintiff, Foxhood was chosen for promotion over her even though she was more highly educated than Foxhood, (*id.* ¶ 103 (Plaintiff held a master's degree while Foxhood had no graduate degree), and had substantially more professional experience than him, (*id.* (stating that La. Civil Service defined professional experience as post-baccalaureate). At the time of his promotion, Foxhood was not an employee of LDH, but rather was a contractor for LDH, and he had professional level experience of only three years. (*Id.*) The minimal qualifications for the position required five years of professional experience; Plaintiff had twenty-five years of this experience,

while Foxhood did not even meet the minimum required as he only had three years of experience. (*Id.*)

Lastly, Plaintiff alleges that Tyler Carruth, a young male, was promoted to a PM4 position "multiple times in multiple sections," including in the Office of Public Health, Medicaid, Office of the Secretary, over older and more qualified applicants, including Plaintiff. (Pl. Aff., ¶ 103, Doc. 68-2.) Further, Plaintiff contends that "Carruth received multiple promotions and raises throughout the previous five years in LDH totaling 18% at a time when state worker salaries were supposedly frozen due to budget cuts." (*Id.*) In this same period of time, Plaintiff claims she received no promotions and only one department-ordered 4% salary increase. (*Id.*)

Plaintiff's Title VII discrimination claim as it relates to Bryan Hardy fails for two reasons. Aside from Plaintiff's conclusory allegation that Bryan Hardy was less qualified, Plaintiff provides no other information about this employee or his promotion to the PM4 Position. Thus, Plaintiff has not presented enough evidence for the Court to determine whether Bryan Hardy is a similarly situated comparator. Moreover, assuming *arguendo* that Plaintiff had provided enough information for the Court to deem Bryan Hardy an appropriate comparator, Plaintiff does not indicate when he was placed into the position, but merely claims that "[t]o this day" the position is filled by Bryan Hardy. (Doc. 68 at 7 (citing Pl. Aff., ¶ 40, Doc. 68-2).) As previously explained, Plaintiff's Title VII discrimination claims for conduct occurring after June 20, 2016 have not been properly exhausted and thus are not actionable. Based on the scant information provided regarding Bryan Hardy, the Court cannot determine whether Plaintiff's discrimination claim as to him has

been exhausted.[10] Therefore, Plaintiff has not met her burden of establishing a *prima facie* case on her Title VII discrimination claim as to Bryan Hardy.

As for the other proffered comparators—Carrone, Foxhood, and Carruth—aside from Plaintiff's contentions that she was more qualified for the positions than them, she provides virtually no facts addressing whether these proffered comparators, at the time of their promotions, held the same job or responsibilities she held at the time she was denied the promotion. She does state that Foxhood was a contractor for LDH at the time he was hired into the position, but that fact weighs against him being deemed similarly situated because Plaintiff never held a similar position. Likewise, Plaintiff does not present any evidence indicating they shared the same supervisor, nor does she discuss whether they have "comparable violation histories" because she does not provide any details about their histories before their promotions aside from her contention that they were less qualified.

Under the burden-shifting framework, Defendant is not required to provide a legitimate, non-discriminatory reason for the adverse employment action until after Plaintiff has met her initial burden of establishing a *prima facie* case. For the foregoing reasons, Plaintiff failed to offer enough evidentiary support to create a material fact issue on whether the individuals mentioned above are similarly situated comparators. Therefore, the Court finds that Plaintiff failed to carry her initial burden here. Accordingly, with respect to Plaintiff's Title VII discrimination claim based on gender, summary judgment is warranted.

### C.  Title VII Claims for Retaliation

#### 1. General Law

---

[10] As noted above, however, it appears unlikely that Bryan Hardy was hired into the PM4 Position before June 20, 2016, because (a) Bryan Hardy filled the position at some point after Carrone filled the position, and (b) Carrone was hired into the position in March of 2016. In other words, based on this information, Plaintiff most likely has not exhausted her discrimination claim as to Bryan Hardy, but the Court does not make that finding today.

"Title VII prohibits employers from retaliating against employees who oppose an employment practice made unlawful by Title VII." *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 325 (5th Cir. 2017), *as revised* (Dec. 7, 2017) (citing *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. § 2000e–3(a))). Employment practices made unlawful "under Title VII include 'fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.' " *Id.* (quoting 42 U.S.C. § 2000e–2(a)(1)). "To establish a prima facie case of retaliation under Title VII, 'a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action.' " *Id.* (quoting *Feist v. La. Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007))).

"An employee has engaged in an activity protected under Title VII if he (1) 'has made a charge, testified, assisted, or *participated* in any manner in an investigation, proceeding, or hearing' (the 'participation clause') under Title VII, or (2) '*opposed* any practice made an unlawful employment practice by this subchapter' (the 'opposition clause')." *Carpenter v. Haaland*, No. 19-13208, 2021 WL 1198261, at *4 (E.D. La. Mar. 30, 2021) (quoting 42 U.S.C. § 2000e–3(a) (emphasis in original). If an employee proceeds under the opposition clause, she is required to "demonstrate that she had at least a 'reasonable belief' that the practices she opposed were unlawful." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)); *see also E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 237 (5th Cir. 2016) ("It has long been the law in this and other circuits

34

that a plaintiff contending that she was retaliated against for proactively reporting employment discrimination need not show that the discrimination rose to the level of a Title VII violation, but must at least show a reasonable belief that it did."). Additionally, in claims of protected opposition, "an employee must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its discriminatory practices." *Allen*, 721 F. App'x at 326 (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007)). As such, "[a] vague complaint or general allegation of unfair treatment, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Id.* (citing *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (unpublished) (per curiam) (finding that a statement complaining about a "hostile work environment" did not constitute protected activity under Title VII because it "lacked a racial or gender basis")) (other citations omitted).

In contrast, no similar showing is required for claims under the participation clause. The opposition clause essentially protects opposition by self-help, whereas the participation clause protects activities that occur in conjunction with or after the filing of an EEOC charge. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (explaining that the "participation clause" was "irrelevant [in that case] because [the employee] did not file a charge with the EEOC until *after* the alleged retaliatory discharge took place."); *see also* 1 B. Lindemann & P. Grossman, EMPLOYMENT DISCRIMINATION LAW 15–9 (5th ed. 2012) ("Because § 704(a) protects participation in only 'an investigation, proceeding or hearing under Title VII,' an employee's statements during an employer's internal investigation that is conducted independently of any EEOC charge generally have been held not protected by the participation clause.").

Concerning the second element of the employee's *prima facie* case, an "adverse employment action" is one that "a reasonable employee" would find to be "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citation omitted); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (emphasizing that the "standard for judging harm must be objective[,]" which is why the employment action is assessed from the perspective of a "*reasonable* employee"). Lastly, and as stated above, establishing a *prima facie* case of retaliation under Title VII requires the employee to show a "causal connection" between their protected activities and the adverse actions taken by their employer. *Allen*, 721 F. App'x at 325 (citations omitted); *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241–43 (5th Cir. 2019); *see also Hernandez*, 670 F.3d at 657 (stating that the third element of the plaintiff's *prima facie* case of retaliation requires the plaintiff to show "there was a causal link between the protected activity and the adverse employment action.") (citation omitted).

Once the plaintiff successfully presents a *prima facie* case of retaliation, "the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *Allen*, 721 F. App'x at 325 (quoting *LeMaire v. Louisiana*, 480 F.3d 383, 388–89 (5th Cir. 2007) (citation omitted)). If the "employer does so, the burden shifts back to the employee to demonstrate that the employer's reason is pretext for retaliation." *Id.* "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Id.* (quoting *Feist*, 730 F.3d at 454 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996))).

### 2. Parties' Arguments

#### a. Defendant's Original Memorandum (Doc. 58-2)

Defendant argues that Plaintiff has not and cannot meet her burden of demonstrating by competent summary judgment evidence that there is an issue of material fact on all three elements of her Title VII retaliation claims. (Doc. 58-2 at 10.) Defendant's entire argument for why Plaintiff has not met that burden is as follows: "LDH points out herein in accordance with Rule 56 the absence of evidence by Plaintiff that she was engaged in an activity protected by Title VII or, if she was, that there is any causal connection between that protected activity and LDH's decision to not transfer Plaintiff to another position or promote her." (*Id.* at 9–10.) Essentially, Defendant avers that Plaintiff has not established the first and third elements required for her to show a *prima facie* case of retaliation. Lastly, Defendant does not provide a reason for any of its decisions or actions that Plaintiff alleges were retaliatory.

### b.  Plaintiff's Opposition (Doc. 68)

In response, Plaintiff argues that her evidence shows LDH retaliated against her based upon her gender and that this retaliation began after she complained about LDH discriminating against her "in favor of a way less qualified and unworthy [male] candidate" for the PM4 Position. (Doc. 68 at 14–15.) Specifically, according to Plaintiff, the acts constituting the ensuing harassment and retaliation include: (1) LDH transferring her to the PI section, where she worked under a male who created a hostile work environment; (2) LDH denying her over 100 promotions, even though she was often the most qualified candidate; (3) LDH "trying to make her discriminate against other women by hiring a young, unqualified male[;]" and (4) LDH "ultimately filling the PM4 Position with two other males . . . who were way less qualified than the female applicants." (*Id.* at 15.) She also claims that LDH ultimately "forced [her] out of LDH entirely." (*Id.*) Finally, Plaintiff points to the affidavits of two other former LDH employees as supporting these facts, (*see* Doc. 68-4; Doc. 68-3), and argues that Defendant has failed to introduce any evidence on her retaliation claim.

### c.  Defendant's Reply (Doc. 69)

In its reply brief, Defendant largely repeats the same argument: Plaintiff must establish a *prima facie* case for her Title VII retaliation claim by proving the three elements set forth above, and she has not done so. (Doc. 69 at 4.) However, Defendant additionally argues that, as the moving party, Defendant can meet its burden under Rule 56 of showing there is no genuine issue for trial by pointing out "the absence of evidence supporting [Plaintiff's] case." (*Id.* at 2 (quoting *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)).) According to Defendant, once the moving party has met this burden, the evidence the nonmoving party comes forward with "must be such that if introduced at trial it would suffice." (*Id.*) Finally, Defendant contends that Plaintiff has not satisfied this standard as she failed to present "admissible evidence" with her opposition that would establish any one of the three elements of her *prima facie* case. (*Id.* at 4.)

### 3. Analysis

Although some of the alleged actions here occurred after Plaintiff filed her initial EEOC charge, she does not indicate whether she contends that these instances of alleged retaliation were taken because she opposed discrimination by complaining or because she filed a charge of discrimination with the EEOC. Additionally, Plaintiff does not meaningfully respond to Defendant's argument that she failed to present evidence showing she was engaged in an activity protected by Title VII. Rather, in her opposition, she merely argues that "[t]his retaliation began when she complained of being passed over for the PM4 Position in favor of a way less qualified and unworthy male candidate in his 30s." (Doc. 68 at 14–15.) Thus, the only protected activity Plaintiff seems to suggest she engaged in, and which she argues LDH retaliated against her for, is her complaining about the PM4 Position in 2013. This instance of her complaining about and opposing alleged discrimination properly falls under the opposition clause. As such, for purposes

of this analysis, the Court will only assess whether Plaintiff's 2013 complaint constitutes "protected activity" under the first element.

Based on the evidence presented, the Court finds that Plaintiff engaged in a protected activity when she complained to the OBH Human Resources Director at that time, Ruby Triggs. In February of 2013, after LDH closed the second posting for the PM4 Position, Plaintiff claims that Triggs told her "that the decision had already been made the year before and that Joshua Hardy would be placed into the PM4 Position as he had been promised[,] even though [Plaintiff] was the highest scored qualified applicant." (Pl. Aff., ¶ 26, Doc. 68-2.) According to Plaintiff, she responded by telling Triggs that (1) she was more qualified for the position than Hardy in various ways; and (2) "[t]he only reason Joshua Hardy was being promoted to the PM4 Position was because he was a young, white male and many such employees were being promoted and treated favorably, especially in technical fields throughout LDH, while older female employees were being punished and/or denied opportunities for promotion." (*Id.* ¶ 27.) According to Plaintiff, "Triggs was very understanding and agreed that what was happening with Joshua Hardy was wrong." (*Id.* ¶ 28.)

To satisfy the "opposition clause," Plaintiff need not prove the employment action she complained about was unlawful under Title VII, but only that she had an objectively reasonable belief that said action violated Title VII. *Byers*, 209 F.3d at 428. Additionally, in making this complaint, she "must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its discriminatory practices." *Allen*, 721 F. App'x at 326 (citing *Turner*, 476 F.3d at 349). Based on the evidence above, the Court finds that, at the time Plaintiff complained to Triggs, it was objectively reasonable for her to conclude Defendant was violating Title VII by holding the PM4 Position open "as promised"

for only Joshua Hardy, even though Joshua Hardy was less qualified for the position than Plaintiff. Moreover, in complaining to Triggs about this alleged discrimination, Plaintiff specifically mentioned gender as the basis for the claimed discrimination. Therefore, the Court finds that Plaintiff has established the first element of her *prima facie* case by showing she was engaged in an activity protected under Title VII.

However, regardless of whether Plaintiff has shown she was subjected to an adverse employment action, her retaliation claims fail for lack of causation. As previously explained, many of Plaintiff's claims for retaliation under Title VII are either time-barred or not actionable for failure to exhaust her administrative remedies. Thus, of the various LDH actions Plaintiff argues constituted retaliation, the only ones properly before the Court include: (1) Defendant denying her promotions between March 4, 2015 and June 20, 2016; (2) Defendant filling the PM4 Position with Michael Carrone; (3) Defendant "trying to make her discriminate against other women by hiring a young, unqualified male[;]" and (4) Defendant "[u]ltimately forc[ing] [her] out of LDH entirely." (Doc. 68 at 15.)

Plaintiff has failed to establish the requisite casual connection between any of these actions and her complaint to Triggs in February of 2013 because all of these actions occurred over two years after Plaintiff complained. Again, to establish a *prima facie* case of retaliation under Title VII, the third element requires Plaintiff to show "a casual link between the protected activity and the adverse employment action." *Hernandez*, 670 F.3d at 657 (citation omitted). Concerning the causation element, the Fifth Circuit has recognized:

> "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). "However, we have made clear that 'the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case.' " *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655

(5th Cir. 2004) (quoting *Swanson*, 110 F.3d at 1188 n. 3). Indeed, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' " *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L.Ed.2d 509 (2001). This court has observed that "a time lapse of *up to* four months has been found sufficient to satisfy the causal connection for summary judgment purposes," *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (emphasis added) (internal quotation marks omitted), whereas a time lapse of five months does not, without additional evidence of retaliation, establish causation. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002).

*Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc.*, 535 F. App'x 348, 353 (5th Cir. 2013) (per curiam) (finding that plaintiff failed to meet *prima facie* burden of establishing causation when there were five and six month gaps and no additional evidence of causation).

Here, with respect to the promotions that Plaintiff was denied, the earliest denials the Court can consider are those that occurred on or after March 4, 2015. As for the other instances of alleged retaliation, Plaintiff's evidence shows that: (a) Carrone was hired into the PM4 Position in March of 2016, (Doc. 68 at 13; Pl. Aff., ¶ 103, Doc. 68-2); (b) Defendant tried to force Plaintiff to discriminate against other women by hiring an unqualified male in April of 2015, (Pl. Aff., ¶¶ 66–67, Doc. 68-2); and (c) that Plaintiff left LDH—an occurrence she argues amounted to a constructive discharge—on November 20, 2017, (Doc. 68 at 10 (citing Pl. Aff., ¶ 115, Doc. 68-2)). Again, the "protected activity" Plaintiff engaged in—complaining to Triggs—occurred in February of 2013. Hence, all the adverse employment actions Plaintiff maintains were taken in retaliation for her 2013 complaint occurred more than two years after she complained.

As this Court has explained, such a large gap in time—without other evidence of retaliation—is insufficient to establish causation. *See Santhuff v. United Parcel Serv., Inc.*, No. 17-1404, 2019 WL 4545610, at *24 (M.D. La. Sept. 19, 2019) (deGravelles, J.) (finding that the "two-year period" between the plaintiff's complaints and his subsequent discipline was "well beyond

the four-month period usually found to be sufficient to establish causation"); *see also Hypolite v. City of Houston, Tex.*, 493 F. App'x 597, 607 (5th Cir. 2012) (finding that plaintiffs failed to meet their *prima facie* burden of showing retaliation when there was a nine-month gap between discipline and their discrimination suit and when there was no other evidence of retaliation); *Robinson*, 535 F. App'x at 353–54 (reaching the same result with five and six month gaps and no additional evidence of retaliation). Therefore, the Court finds that Plaintiff has failed to satisfy her *prima facie* burden of establishing causation. For this reason, the *Motion* is granted, and Plaintiff's Title VII retaliation claims against Defendant are dismissed.

### D.    Equal Pay Act Claims

#### 1. General Law

The Equal Pay Act ("EPA") prohibits employers from discriminating "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). To establish a *prima facie* case of wage discrimination under the EPA, Plaintiff must show that: (1) her employer is subject to the EPA; (2) she performed work in a position requiring "equal skill, effort, and responsibility under similar working conditions[;]" and (3) she was *paid less* than a male employee in the position "providing the basis of comparison." *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993) (citation omitted). Plaintiff "need not show that her job duties were identical to those of higher paid male employees" to make out a *prima facie* case; rather, she only needs to demonstrate that the "skill, effort and responsibility" required in the performance of the compared jobs are "substantially equal." *Horton v. G4S Secure Sols. (USA), Inc.*, No. 16-544, 2018 WL 1997535, at *7 (M.D. La. Apr. 27, 2018) (Dick, C.J.) (citing *Wallace v. Bd. of Sup'rs for the Univ. of Louisiana Sys.*, No. 14-657, 2016 WL 7116107, at *5 (M.D. La.

Dec. 6, 2016) (Dick, C.J.) (quoting *Jones v. Flagship Int'l*, 793 F.2d 714, 722–23 (5th Cir. 1986)) (citation omitted)).

Once Plaintiff establishes her *prima facie* case, "the burden shifts to the employer to demonstrate that the disparity in pay is based on one of the EPA's four exceptions: '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.' " *Durham v. AMIKids, Inc.*, No. 17-343, 2019 WL 12290115, at *5 (M.D. La. Jan. 11, 2019) (deGravelles, J.) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). If the employer satisfies its burden by establishing one of the EPA's enumerated exceptions, then "the burden shifts back to the plaintiff to show that the proffered explanation is a pretext for wage discrimination." *Id.* (citing *Strong v. Grambling State Univ.*, 159 F. Supp. 3d 697, 711 (W.D. La. 2015)).

### 2. Parties' Arguments

#### a. Defendant's Original Memorandum (Doc. 58-2)

Defendant does not reach the issue of whether any of the EPA's four exceptions apply because Defendant asserts that Plaintiff has not and cannot meet her initial burden of establishing a *prima facie* case under the EPA. (Doc. 58-2 at 11–12.) First, Defendant cites one of the Ruling and Orders previously issued in this case, whereby the Court dismissed Plaintiff's claims for any EPA violations occurring before December 22, 2014 as being untimely. (*Id.* at 10 (citing Doc. 43).) Defendant also submits that, beginning on December 22, 2014, Plaintiff held a position at LDH as a Medicaid PM2, and she remained in that position until she was transferred to a position with the Louisiana Division of Administration on November 20, 2017. (*Def. SMF*, ¶ 2, Doc. 58-1 (citing Guttzeit Aff., ¶ 4, Doc. 58-3).)

Defendant then presents statistical evidence showing that the "average gross bi-weekly salary" that LDH paid its female PM2s was higher than the average gross bi-weekly salary it paid its male PM2s at the end of 2014, 2015, and 2016. (Doc. 58-2 at 11 (citations omitted).) According to Defendant's evidence, the only year LDH's female PM2s were paid less on average than their male counterparts was in 2017. (*Id.* (citing Guttzeit Aff., ¶¶ 19–22, Doc. 58-3).) However, Defendant contends that throughout this period—from 2014 through the end of 2017—Plaintiff's gross bi-weekly salary as a PM2 at all times exceeded the average salaries of both male and female PM2s. (*Id.* (citing Guttzeit Aff., ¶¶ 19–22, Doc. 58-3); *id.* at 10 (citing Guttzeit Aff., ¶ 18, Doc. 58-3).) Based on this evidence, Defendant maintains that Plaintiff is unable to create a genuine issue of material fact that LDH unfairly compensated her as a PM2 in comparison to other male PM2s. (*Id.* at 11–12.)

Additionally, the testimony from Guttzeit's affidavit indicates that, as classified employees within the meaning and structure of the Rules of the Louisiana Civil Service Commissions ("LCSC"), Plaintiff's and other LDH employees' salaries are "not at the discretion of LDH but are instead set in accordance with pay ranges established by the LCSC for the grade to which the employee's position is allocated and the permitted adjustments thereto as set forth in the Rules of [the] LCSC." (Guttzeit Aff., ¶ 17, Doc. 58-3.) Hence, according to Defendant, gender is not a factor ever considered by LDH in matters relating to employment compensation. (*Id.*)

### b. Plaintiff's Opposition (Doc. 68)

In opposition to the *Motion*, Plaintiff first maintains that Defendant's argument is fatally flawed because "it includes males throughout LDH rather than those who were similarly situated to [Plaintiff] in the technical sections only at LDH." (Doc. 68 at 15.) In addition, Plaintiff attacks Defendant's contention that LDH salaries could never be discriminatory because LDH pays its

employees pursuant to the LCSC Rules by arguing that LDH routinely "went around" the LCSC Rules. (*Id.* at 15–16.) Lastly, Plaintiff avers that several male LDH employees were treated differently from her regarding compensation. (*Id.* at 15–18.) The male employees Plaintiff claims were compensated more favorably will be discussed in more detail below.

### c.   Defendant's Reply (Doc. 69)

Defendant responds by asserting that Plaintiff failed to present with her opposition "admissible evidence that LDH paid Plaintiff less than males in the same or similar positions requiring equal skill, effort, and responsibility under similar working conditions." (Doc. 69 at 5.) In contrast, according to Defendant, the evidence and testimony provided by Defendant—that is, the data demonstrating Plaintiff's gross bi-weekly salary exceeded the same average salary of male PM2s in 2014, 2015, 2016, and 2017—shows that LDH did not pay Plaintiff less than similarly situated males. (*Id.*)

### 3. Analysis

Again, to establish a *prima facie* case of wage discrimination under the EPA, Plaintiff here must show that: (1) her employer is subject to the EPA; (2) she performed work in a position requiring "equal skill, effort, and responsibility under similar working conditions;" and (3) she was *paid less* than a male employee in the position "providing the basis of comparison." *Chance*, 984 F.2d at 153 (citation omitted). To make out a *prima facie* case, Plaintiff "need not show that her job duties were identical to those of higher paid male employees[;]" instead, she is only required to show that the "skill, effort and responsibility" required in the performance of the compared jobs are "substantially equal." *Horton*, 2018 WL 1997535, at *7 (citations omitted).

Here, with respect to most of the male employees Plaintiff asserts LDH treated more favorably than her in terms of compensation (that is, Joshua Hardy, Jode Burkett, Tyler Carruth,

Ryan Bilbo, Michael Carrone, Timothy White, and Lucas Tramontozzi), the Court found that Plaintiff's statement of fact on this issue should be stricken for lack of foundation. (*See* Doc. 73 at 20–21.) However, even if the Court were to consider that statement of fact for purposes of the *Motion*, Plaintiff presents an undeveloped argument. She asserts generally that these individuals all received "multiple promotions and/or double digit pay raises during a time that [Plaintiff] received no promotions and only one agency-wide ordered 4% raise available to everyone." (Doc. 68 at 18; Pl. Aff., ¶ 114, Doc. 68-2.) Yet, Plaintiff never argues, nor does her evidence purport to show, that any of these male employees were actually paid more than her. Thus, with respect to these individuals that Plaintiffs seems to offer as comparators, Plaintiff has failed to show that there are genuine issues of fact regarding the third element of her *prima facie* case.

However, Plaintiff does argue that she was paid less than two male LDH employees, Jay Besse and George Bucher. First, Plaintiff contends that Besse, a "direct equal as a PM2[,]" is one "of many more examples of a direct correlation of how [she] was paid less than men, even though she was more educated and had more experience than" him. (*Id.*) According to Plaintiff:

> Besse was hired at the same level as [her] when she was hired (PM2) even though he only had a Bachelor's degree and only five years of work experience while [Plaintiff] had a Bachelor's degree, a Master's degree and certification as a SAS Advanced Programmer with 23 years of experience when [she] started working at LDH. Yet Besse received a 42% increase in pay from his previous job and started at $85,000 annual salary; [in contrast, Plaintiff] received a 23% increase in pay from [her] previous job and started at $80,000 annual salary.

(Pl. Aff., ¶ 103, Doc. 68-2 at 26.)

The Court finds this insufficient to establish Plaintiff's *prima facie* case for two reasons. First, Plaintiff seems to compare Besse's salary with the salary she received when she started as a PM2. Plaintiff's evidence shows that, on March 1, 2012, she moved from her position in LDH's Medicaid division to become a PM2 in the OBH division. (*Id.* ¶ 7.) According to the evidence

presented by Defendant, as of December 22, 2014, Plaintiff held a position at LDH as a Medicaid PM2, and she remained in that position until she was transferred to a position with the Louisiana Division of Administration on November 20, 2017. (*Def. SMF*, ¶ 2, Doc. 58-1 (citing Guttzeit Aff., ¶ 4, Doc. 58-3).) Although Plaintiff attempts to dispute this fact, neither her response nor the portions of her affidavit cited as supporting that denial actually contradict its truth. (*See Pl. OSMF*, ¶ 2, Doc. 68-1 (citing Pl. Aff., ¶¶ 7, 106, 108, Doc. 68-2).) Thus, based on this evidence, it appears Plaintiff was a PM2 in some fashion for more than two years before December 22, 2014.[11]

For this reason, it is unclear to the Court whether Plaintiff is using as a comparison her salary from before or after December 22, 2014. And, per this Court's prior Ruling and Order, (Doc. 43), only compensation occurring before December 22, 2014 can form the basis of Plaintiff's EPA claim. Moreover, this confusion is further compounded by the fact that Plaintiff does not specify when Besse was hired as a PM2, thereby providing no way for the Court to determine whether *he* was paid an allegedly higher salary before or after December 22, 2014. In sum, with respect to Plaintiff's claim that LDH violated the EPA by paying her less than Besse, Plaintiff has failed to satisfy her *prima facie* case.

Finally, Plaintiff claims that George Bucher was paid more than her by LDH in 2014, even though he was hired to work for her and thus subordinate to her. She submits: "As Bucher's supervisor, [Plaintiff] was making $17,406.00 less than him in 2014 (by 22%), even though she had more education and relevant experience than he did." (Doc. 68 at 18; Pl. Aff., ¶ 114, Doc. 68-2.) As to Bucher, the testimony from Plaintiff's affidavit creates a genuine issue of material fact

---

[11] In another portion of her affidavit, however, Plaintiff states that she was required to move to the Office of the Secretary Program Integrity ("PI") Section in 2014. (Pl. Aff., ¶ 50, Doc. 68-2.) Assuming *arguendo* that this means Plaintiff was not a PM2 from 2014 through 2017, she still fails to make her *prima facie* case, specifically the second element, because (1) she provides no argument as to how this position is similar to Besse's position as a PM2, and (2) she still has provided no evidence indicating when Besse was allegedly paid more than her.

that (a) Plaintiff's position required "skill, effort, and responsibility" that was at least similar to her subordinate, Bucher, under similar working conditions, and (b) that Plaintiff was paid less than Bucher in that position. However, again, the Court cannot glean from the evidence presented whether this alleged disparity in compensation occurred before or after December 22, 2014. Put another way, Plaintiff has failed to present enough summary judgment evidence to show that her EPA claim as to Bucher is timely. Resultantly, the Court finds that Plaintiff has failed to meet her *prima facie* burden on this claim.

In conclusion, because Plaintiff is unable to satisfy her *prima facie* case under the EPA, Defendant is entitled to summary judgment and Plaintiff's EPA claims will be dismissed.

## VI.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment Pursuant to Fed. R. Civ. Proc. 56 on Plaintiff's Remaining Claims* (Doc. 58) filed by Defendant the Louisiana Department of Health is **GRANTED**.

(a) Plaintiff's Title VII discrimination claims based on acts occurring before March 4, 2015 are **DISMISSED WITH PREJUDICE** for being time-barred; her discrimination claims based on acts occurring after June 20, 2016 are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust; and her discrimination claims based on acts occurring between March 4, 2015 and June 20, 2016 are **DISMISSED WITH PREJUDICE**.

(b) Plaintiff's Title VII retaliation claims based on acts occurring before March 4, 2015 are **DISMISSED WITH PREJUDICE** for being time-barred; her retaliation claims on which summary judgment is granted for failure to exhaust, as identified above, are **DISMISSED**

**WITHOUT PREJUDICE**; and all of her remaining retaliation claims are **DISMISSED WITH PREJUDICE**.

    (c) Plaintiff's Equal Pay Act claims are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on <u>March 10, 2023</u>.

                        _____

                        **JUDGE JOHN W. deGRAVELLES**
                        **UNITED STATES DISTRICT COURT**
                        **MIDDLE DISTRICT OF LOUISIANA**